## UNITED STATES v. CRITTENDEN.

District Court, W. D. New York.
July 7, 1938.

Eugene J. Dwyer, of Rochester, N. Y., for defendant.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Joseph J. Doran, of Rochester, N.. Y., of counsel), for the United States.

BURKE, District Judge.

The indictment herein was filed April 22, 1938. The defendant filed a demurrer and moved to quash the indictment. The defendant is charged with making and procuring the presentation of false affidavits in connection with his accounts as committee of the persons and estates of incompetent World War Veterans. The indictment contains twelve counts. Six estates are involved. Two counts relate to each of the six estates. The odd numbered counts charge the making of the false affidavit attached to the account, and the even numbered counts charge the procuring of the presentation of the false affidavit to the Veterans' Administration. The indictment sets forth the program established by Congress for the relief of person who were disabled and for the dependents of persons who died as a result of disability suffered in the military service of the United States in the World War. It sets forth the method provided by Congress for the appointment of guardians, curators, or conservators in the cases of mental incompetents of persons entitled to benefits under the act, and for the supervision and control by the Veterans' Administration of the acts of such appointees, and for the securing of accountings from such appointees covering the administration of their trust. It then recites the appointment of the defendant

as committee of the persons and estates of the several World War Veterans, the receipt by him as committee from the Government of various sums for insurance, compensation and other benefits due the incompetent veterans under the acts of Congress. It then states that for the purpose of ascertaining the true condition of the estates of such incompetent veterans, the Veterans' Administration through its Chief Attorney and Regional Attorney instituted a judicial proceeding to compel the defendant, as committee, to make and file an account of his actions as such committee and that thereafter he did make and file his account in each of the said estates, attached to each of which was his affidavit as to its truth and correctness and as to the receipt and disposition of the moneys of said incompetents. The indictment then charges that the defendant knowingly made a false and fraudulent affidavit concerning "the payment of a claim for pension" and "pertaining to a matter within the jurisdiction of the Administration of Veterans' Affairs". It charges that the affidavit was false and fraudulent in that there were material errors and omissions in the account to which the affidavit was directed, to the prejudice of the Veterans' Administration and the incompetent veteran and that the account did not correctly set forth the true condition of said estate but set forth an amount represented to be a balance on hand whereas it was not on hand but represented the total amount more or less theretofore converted and misappropriated, in amounts and at times unknown, to the personal use and benefit of the defendant, as the result of all of which the affidavit was false and fraudulent and contrary to the form of the statute, to wit, Section 81 of Title 18, U.S.C.A. As to each separate estate the charges are substantially of the same character and differ only as to the details of the alleged fraud.

Section 81, Title 18, U.S.C.A. referred to in the indictment reads:

"Every person who knowingly or willfully makes or aids, or assists in the making, or in any wise procures the making or presentation of any false or fraudulent affidavit, declaration, certificate, voucher, or paper or writing purporting to be such, concerning any claim for pension or payment thereof, or pertaining to any other matter within the jurisdiction of the Administration of Veterans' Affairs or of the Secretary of the Interior, or who knowingly or willfully makes or causes to be made, or aids or assists in the making, or presents or causes to be presented any paper required as a voucher in drawing a pension, which paper bears a date subsequent to that upon which it was actually signed or acknowledged by the pensioner, and every person before whom any declaration, affidavit, voucher, or other paper or writing to be used in aid of the prosecution of any claim for pension or bounty land or payment thereof purports to have been executed who shall knowingly certify that the declarant, affiant, or witness named in such declaration, affidavit, voucher, or other paper or writing personally appeared before him and was sworn thereto, or acknowledged the execution thereof, when in fact such declarant, affiant, or witness did not personally appear before him or was not sworn thereto, or did not acknowledge the execution thereof, shall be punished by a fine not exceeding five hundred dollars or by imprisonment for a term of not more than five years."

■ Notwithstanding the language "or pertaining to any other matter within the jurisdiction of the Administration of Veterans' Affairs" this section relates only to the subject of pension claims. This construction of the present statute is inevitable in view of the construction placed upon the statute relating to pension and bounty land claims as it stood in 1908 when United States v. Keitel, 211 U.S. 370, 29 S.Ct. 123, 53 L.Ed. 230 was decided. In that case the defendants had been indicted for making and presenting and causing to be made and presented, in connection with certain coal lands, false, forged and fictitious affidavits and papers. The court below held that the statute embraced only papers relating to pension and bounty land claims. The section alleged to have been violated originally related to pensions and bounty land claims and in 1898 by amendment the wording was changed so that it then read in part " * * * or pertaining to any other matter within the jurisdiction of the Commissioner of Pensions or of the Secretary of the Interior". 38 U.S.C.A. § 126 note. The 1898 amendment added the words "or of the Secretary of the Interior". The Supreme Court in sustaining the lower court held that the amendment did not have the effect of bringing within its scope matters not related to pensions and bounty land claims.

It becomes necessary to consider whether the acts charged in the indictment re-

late to any claim for pension or payment thereof within the meaning of Section 81. The World War Veterans' Act was enacted in 1924, Chapter 10, section 421 et seq., of Title 38 U.S.C.A. It set up an independent bureau under the President to be known as the United States Veterans' Bureau under a Director as the administrative officer. Part II of this chapter, section 471 et seq., entitled "Compensation and Treatment" provided for payment of "compensation" for death or disability therein described. The benefits provided therein are referred to as "compensation", not pensions. In Section 489 of the act the terms "compensation" and "pension" are used in contra-distinction.

Part III of this chapter, section 511 et seq., deals with insurance on the lives of veterans. Concededly these benefits are not pensions.

Chapter 11, section 591 et seq., of Title 38 U.S.C.A. is entitled "World War Veterans' Adjusted Compensation" and deals with compensation for Veterans who saw active service. In no place are the benefits designated by Congress as pensions.

In enacting the World War Veterans' Act and the World War Adjusted Compensation Act Congress set up a complete and comprehensive system of penalties dealing with violations relative to compensation, insurance and other benefits provided. Sections 552 to 556, inclusive, and Section 682, Title 38 U.S.C.A.

 It is unnecessary to determine whether compensation benefits provided by the "World War Veterans' Act" and the "World War Veterans' Adjusted Compensation Act", bear the essential elements of pensions in the usual sense of the term. The important inquiry is whether Congress intended violations relating to benefits under these acts to be subject to the provisions of Section 81 of Title 18 U.S.C.A. Congress made the distinction in terms in designating the benefits under these acts as "compensation". It is significant that although the benefits under the new acts were designated by Congress as "compensation" the term "pension" was not changed in Section 81, although the Section was amended in 1930. In enacting that amendment Congress must be presumed to have known the distinction it had already made between the terms "compensation" and "pension". From these considerations it may fairly be concluded that Congress did not intend that violations relating to compensation

benefits under the "World War Veterans' Act" and the "World War Veterans' Adjusted Compensation Act" should be subject to the provisions of Section 81 of Title 18 U.S.C.A.

 If the facts set forth in the indictment constitute a crime under any United States Statute, however, it is not a fatal defect that they are referred to as a violation of Section 81. Capone v. U. S., 7 Cir., 51 F.2d 609, 616, 76 A.L.R. 1534.

The Government concedes that if Section 81 is not applicable, the only other statute violated by the charge of the indictment is Section 80, Title 18 U.S.C.A. That section reads as follows:

"*Presenting false claims.* Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder shall be fined not more than $10,000 or imprisoned not more than ten years, or both".

It is urged by the defendant that this section was not violated since there was no pecuniary or property loss to the Government occasioned by the acts charged in the indictment. Since the amendment to Section 80 in 1934 pecuniary loss to the Government is no longer an essential element of the crime defined by the act. United States v. Mellon, 2 Cir., 96 F.2d 462, decided April 18, 1938.

There remains for consideration the question as to whether the fraudulent affidavits were made and used by the defend-

ant "in any matter within the jurisdiction of any department or agency of the United States". They were made and used in a judicial proceeding in the state court brought by the legal representative of the United States Veterans' Administration to compel the defendant to account for his acts as committee of the persons and estates of incompetent World War Veterans. In Hines, as Administrator of Veterans' Affairs v. Stein, 298 U.S. 94, at page 98, 56 S.Ct. 699, at page 701, 80 L.Ed. 1063, the Supreme Court said:

"During many years, Congress has recognized the propriety, if not the necessity, of intrusting the custody and management of funds belonging to incompetent pensioners to fiduciaries appointed by state courts, without seeking to limit judicial power in respect of them. To the contrary, it has directed that whenever any guardian, curator, or conservator fails properly to execute his trust, etc., the Administrator may 'appear in the court which has appointed * * * and make proper presentation of such matters.' Chapter 723, § 2, 44 Stat. 792; amended by chapter 510, § 1, 49 Stat. 607, 38 U.S.C., § 450 [38 U.S.C.A. § 450]. Authority of the state courts over guardians for incompetents is thus definitely recognized. The Administrator is expressly empowered to suspend further payments if the guardian is found to be acting improperly; so much is possible without conflict.

"Nothing brought to our attention would justify the view that Congress intended to deprive state courts of their usual authority over fiduciaries, or to sanction the promulgation of rules to that end by executive officers or bureaus."

The settlement of the accounts as filed was a matter exclusively within the jurisdiction of the state court. To so hold is not to render meaningless the various regulations of the Veterans' Administration requiring periodic accountings of guardians of Veterans' Administration beneficiaries nor to deprive it of supervision of the acts of such guardians consistent with the jurisdiction of the state courts over such guardians. The purpose of these reg-

ulations is to assure a constant vigilance by the Veterans' Administration over the acts of such guardians in order that the funds of the beneficiaries may be preserved intact. These regulations give authority to the Veterans' Administration to cite guardians to account and to file exceptions to the accounts as filed and for taking action directed toward removal of a guardian where the accounts are objectionable. Cooperative legislation by the State of New York, Civil Practice Act, Article 81-A, § 1384-a et seq., provides means for the appointment and supervision of guardians of wards of the United States Veterans' Bureau, for compelling accountings and provides that the administrator of the Veterans' Administration or his legal representative shall be recognized as a party in interest in any such proceeding. According to the state law a certified copy of each of such accounts filed with the court shall be sent by the guardian to the office of the Veterans' Administration.

The making and presentation of the fraudulent affidavits attached to the defendant's accounts was not "in any matter within the jurisdiction of any department or agency of the United States" within the meaning of the term "jurisdiction" as used in Section 80. The function of the Veterans' Administration in the matters covered by the accounts filed by the defendant and supported by the fraudulent affidavits was to examine the accounts as an interested party and to file objections. The determination by the court of the questions at issue might lead to removal of the guardian or to the suspension of payments. This falls short of jurisdiction when the word is thus used in a penal statute. Its use there suggests the meaning of authority to determine the matter before it. That authority or jurisdiction to determine questions regarding the accounts as filed was in the state court and not in the Veterans' Administration. There was, therefore, no violation of Section 80 charged in the indictment.

The demurrer should be sustained and the motion to quash granted.