## TERRY v. UNITED STATES.

### Nos. 12210, 12211.

Circuit Court of Appeals, Eighth Circuit.

Oct. 19, 1942.

Rehearing Denied Dec. 1, 1942.

James E. Burke, of Kansas City, Mo., for appellant.

Otto Schmid, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., and Richard K. Phelps, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

C. W. Terry prosecutes these appeals (consolidated) from judgments of conviction and sentences entered against him under two indictments which charged him and a codefendant with violations of Section 35(A) of the Criminal Code, 18 U.S.C.A. § 80, the pertinent portion of which reads as follows:

"Whoever shall knowingly and willfully * * * make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made

or used any false bill, receipt, voucher, **roll**, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States, * * * shall be fined" etc.

The gist of each of the indictments **is** that defendants on stated dates and within Jackson County, Missouri, made and caused to be made and used and caused to be used, certain certificates containing fraudulent and fictitious statements in a matter within the jurisdiction of an agency of the United States, to-wit, the Federal Housing Administration.[1]

At the conclusion of all the evidence the defendant moved the court to direct a verdict in his favor on the ground, among others, that there was no evidence that defendant made or used or caused to be made or used the certificates referred to in the indictments in a matter within the jurisdiction of an agency of the United States, and it is contended on these appeals that the court erred in denying the motion. It is not contended that the Federal Housing Administration is not "an agency of the United States", but it is insisted that there was no evidence that the acts charged to have been committed by defendant in Jackson County, Missouri, on or about January 8th and 11th, 1940, were in a matter within the jurisdiction of the Federal Housing Administration.

The powers conferred upon the Federal Housing Administration include the power to insure financial institutions which the Administrator approves as eligible for credit insurance against losses which they may sustain as a result of purchases of obligations representing advances of credit in limited amounts for the purpose of financing the building of new structures or improving old ones by owners or lessees of real property, and the Administrator is required to charge a premium for such insurance not exceeding three-fourths of one percent per annum of the net proceeds of the advance of credit insured. 12 U.S.C.A. § 1703(a) (f). The legislative plan does not contemplate that the government agency may itself lend money to persons desiring to build upon or improve their property. It leaves such transactions to private enterprise. The governmental aid is to be effected solely through insurance granted to approved institutions, which approved institutions leave the making and servicing of loans to others, buying such as are acceptable to themselves and then obtaining insurance from the Administration in re-

---

[1] "The grand jurors * * * upon their oaths present and charge that at Kansas City, Jackson County, Missouri, in the Western Division of the Western District of Missouri, and within the jurisdiction of this court, on or about January 8, 1940, C. W. Terry and Fred W. Lewis, alias Frank Montgomery, did unlawfully, wilfully, knowingly, falsely and feloniously make and cause to be made and use and cause to be used, a certain certificate containing certain fraudulent and fictitious statements, towit, a Federal Housing Administration Completion Certificate of the following tenor, towit:

" 'Completion Certificate

" 'Notice to Borrower—Do not sign this certificate until the work is satisfactorily completed.

" 'I (we), the undersigned, hereby certify that all articles and materials have been furnished and installed and the work satisfactorily completed in accordance with my application for a loan on the premises as indicated below and pursuant to the provisions of Title I of the National Housing Act as amended.

" 'The undersigned hereby authorizes detachment of my (our) note, and, if said note is undated, hereby authorizes C. I. T. Corporation to insert the date hereof or any later date as the date of said note.

" '(Signature)

Jessie Williams
" 'Francis Williams
" '(Address of Property Improved)
" 'Jan. 8, 1940
" '(Date)'

"Which said certificate was so made and caused to be made and used and caused to be used in a matter within the jurisdiction of the Federal Housing Administration, to wit, an application for a Federal Housing insured loan in the name of Jessie Williams and Francis Williams, which said Federal Housing Administration was then and there and at all times mentioned in this indictment an agency of the United States, duly and legally authorized, established and organized in accordance with the provisions of Title I of Chapter 13 of Title 12 of the United States Code Annotated for the insurance of loans and advances of credit for the purpose of financing alterations, repairs and additions upon approved real property by the owners thereof, the said C. W. Terry and Fred W. Lewis alias Frank Montgomery well knowing at the time of so making and causing to be

spect to such of the loans as they may choose to have insured.

Pursuant to the power granted and in conformity with regulations promulgated by him, 12 U.S.C.A. § 1703(g), the Administrator has approved many financial institutions as eligible for credit insurance and at their request grants them the insurance contemplated by the Act in consideration of fixed premiums.

It appears from the evidence in this case that the Administrator has so approved the Commercial Investment Trust, Inc., a corporation organized under the laws of Delaware with its principal office in New York. The corporation is referred to as an insured institution having the right to obtain insurance from the Administration against loss in respect to such loans of the character defined in 12 U.S.C.A. § 1703(a) as it may acquire and may desire to have insured at the premium rate fixed by the Administrator.

It also appears that the Commercial Investment Trust, Inc., does business with and owns all the stock of a Maryland corporation known as the C. I. T. Corporation which has its principal place of business at Chicago and a branch office at Kansas City, Missouri. The two corporations are distinct and separate but they have entered into contracts dated January 1, 1940, which recite that C. I. T. Corporation is engaged in the business of purchasing secured installment obligations created in the sale or lease on deferred payment plans of automobiles and other chattels termed "retail paper", and also short time secured obligations of dealers and distributors of automobiles and other products termed "wholesale paper", and that said corporation proposes from time to time to offer certain of said retail and wholesale paper acquired by it for sale to the investment trust company. The investment trust company agrees to buy such of it as is acceptable to it on terms and conditions elaborated in the contract. The collection and servicing of the paper is left to the C. I. T., the uninsured corporation. The contracts contain no reference to the National Housing Act or its insurance provisions.

With this general situation in mind, we turn to the transactions referred to in the indictment in No. 12211. The certificate there set forth is a declaration by Jessie and Francis Williams that all materials had been furnished and installed and all work had been completed in accordance with their application for a loan on premises indicated. Such application was exhibited in evidence and disclosed that said Jessie and Francis Williams had thereby applied in writing to the C. I. T. Corporation for a credit of $500.00 to be expended for materials in the improvement of a house owned by them situated at 2415 North 7th Street in Kansas City, Kansas, which they had bought for $1,500.00. It appeared that the application was presented to the King Lumber and Supply Company, a dealer at Kansas City in building material, and was by it submitted to the C. I. T. Corporation for its approval. Upon receipt of such approval the lumber company made delivery of lumber and other material to the value of $144.25. Thereafter a promissory note payable to the lumber company signed by Jessie and Francis Williams in the amount of $574.87 payable in monthly installments of $15.97 was presented to that company, and after taking out the $144.25 due it it issued its check payable to the co-defendant in the indictment for $355.75, balance of the $500.00 credit. Thereafter the lumber company transferred the $574.87 note to the C. I. T. Corporation, which in turn appears to have sold it to the trust investment company. That company obtained insurance for itself against loss in respect to the note from the Federal Housing Administration.

There was substantial evidence that the application for the credit and the completion certificate contained false and fraudulent statements and that Jessie and Francis Williams had never bought and did not own the described property or intend to make improvements upon it; that no materials were installed or labor performed as declared in the completion certificate, and that the signatures upon the documents had been obtained by fraud and trickery. The government showed, over objection by the defendant, that upon the accrual of loss by the non-payment of the note the Administration was obliged to and did reimburse

---

made, using and causing to be used the said completion certificate hereinabove set out, it contained certain fraudulent and fictitious statements, to wit:

" 'I (we), the undersigned, hereby certify that all articles and materials have been furnished and installed and the work satisfactorily completed in accordance with my application for a loan on the premises as indicated below and pursuant to the provisions of Title I of the National Housing Act as amended.' "

the holder thereof in accordance with its insurance obligation.

Each of the documents, the application for the credit, the completion certificate and the promissory note, was upon a printed form and each contained reference to the Federal Housing Administration by use of the initials F H A or the name printed in full.[2]

The references were sufficient to remind the borrower (as by legal implication he was bound to know) that the loan was of such kind and form that the obligation might become the subject of an insurance contract between the Administration and some eligible approved institution which might acquire it and request and pay for credit insurance in respect to it. Nothing in the blanks however was intended as a representation that either the C. I. T. Corporation, to which the application was addressed, or the lumber company, to which the note was made payable and delivered, was an agency of the government or was entitled to have credit insurance under the Act (see 12 U.S.C.A. § 1731(d), and there was no expression of intention or promise on the part of either to obtain or cause such insurance to be obtained in respect to the loan. The information sought to be elicited and stated in the forms was merely such as is required generally by lenders making such loans, and the promissory note is an ordinary negotiable form except as stated. There is nothing in the record to indicate what proportion of loans acquired by the King Lumber and Supply Company, the C. I. T. Corporation or the Commercial Investment Trust Company, ultimately became the subject of the Administration insurance or what circumstances would control the several companies in making disposition of them in that respect. So far as appears, each of the concerns was free to retain its notes to its own use and each was entirely independent of any control or direction of the defendant in that matter.

Extensive arguments are directed to the asserted insufficiency of the evidence to sustain a finding that the appellant participated in the loan transaction in such a way as to be chargeable as a principal therein if it constituted a violation of the statute under which the indictment was laid, but we consider first the contention that there was no proof that the statute was violated—that is, that the acts shown to have been done in Missouri were not "in a matter within the jurisdiction of the Federal Housing Administration."

The question is not without difficulty. On the one hand it is apparent that under the stimulation of the National Housing Act, a vast number of small loans are made throughout the country in reliance upon its credit insurance provisions, and that wide opportunity is consequently afforded for the perpetration of such fraud and the ultimate infliction upon the federal government of such loss as this case discloses, and there can be no question that the power of the government may and should be exercised to provide appropriate protection by penal legislation. On the other hand, the business of making small loans of the kind which may become insurable under the Act is, and has always been commonly and generally carried on in all the states and in the aggregate of transactions it constitutes a very considerable business of local character in each of the states. All of the states have penal laws against the perpetration of fraud in obtaining such loans. As the relevant part of the plan of the Housing Act leaves all of the actual business of making, securing and collecting the loans which may be brought within its purview to be carried on in the several states by private persons (doubtless in large part by the same persons theretofore engaged in that same general business), it is not self evident that Congress would choose (even if it could) to extend the federal criminal jurisdiction to all of that business. It might

[2] The following appears in the application,

"The following information * * * is furnished for the purpose of inducing you [the C. I. T. Corporation] to grant credit under the terms of Title I of the National Housing Act." "Warning. Misrepresentation of use of proceeds * * * constitutes violation of Federal law." "List all your debts * * * Include all mortgages (whether insured or held by the Federal Housing Administrator, the H. O. L. C. or any others) Title I F. H. A. Modernization Loans, obligations to any other agency or department of the Federal Government, etc." "Are you applying for any other F. H. A. improvement loans at this time?" Under large caption "Warning" Sec. 512 (a) National Housing Act as amended is printed verbatim.

The completion certificate is correctly set forth in the indictment.

The promissory note includes the provision "Authorized F. H. A. 'late charges' (5c per $1, maximum $5) payable on any installment more than 15 days in arrears."

well content itself by limiting such federal criminal jurisdiction to those cases where loans of the character described in Section 1703(a), 12 U.S.C.A., are in fact intended by the parties to be offered for credit insurance by the government agency.

It is contended for appellant that the Congress has made its choice and intention evident by the enactment of 12 U.S.C.A. § 1731 as a part of the National Housing Act. It is provided in that section that "Whoever, for the purpose of obtaining any loan or advance of credit * * * with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance * * * makes * * * or causes to be made * * * any statement, knowing the same to be false * * * shall be punished * * *", and appellant's position is that such penal provision evidences the determination of Congress not to attempt to extend the federal criminal jurisdiction beyond the cases in which at least an intent to invoke the powers of the Housing Administration is present. As it is not charged in this indictment that the defendant had such intent in respect to the loan transaction on which the indictment against him is based, his position is that his motion for directed verdict should have been sustained.

It is apparent on consideration of all of penal Section 1731(a) (d) (e) (f) that Congress had clearly in mind the increased opportunities for perpetration of fraud which might affect the government created by the Housing Act and the penal provisions for government protection are of most comprehensive character. It is very plain that the act here charged against the defendant, of making and causing to be made and using and causing to be used a certificate containing fraudulent statements, was the kind of an act particularly in contemplation of Section 1731, but Congress was at pains to make it punishable by federal authority only in the cases where it manifestly ought to be so punished, i. e., in the cases where the intent to affect the exercise of federal authority exists.

The government contends that the phrase, "in a matter within the jurisdiction of any agency of the United States", found in the statute on which the indictment here is predicated, should be interpreted to cover the much wider field of cases where persons who issue false statements merely create the means which other persons acting independently may make use of to the government's injury.

The determination of the question whether a matter is or is not within the jurisdiction of a government agency is properly for the courts, but our interpretation of the phrase ought not to extend its import and application into a field from which Congress has seen fit to exclude the exercise of federal power. It is not necessary to attempt particular definition of the circumstances under which acts are or are not done in a matter within the jurisdiction of a federal agency, but interpretation of the phrase must be made in the light of the legislative intent as it has been disclosed in the Acts of Congress. We are of the opinion that on the charge and the proof in this case it would be contrary to the legislative intent to sustain this conviction. It is clear that the Housing Administration had no cognizance of the Williams loan transaction on which the indictment rests at the time of the commission of the acts charged against defendant in respect to that transaction. Whether the Administration would or would not obtain such cognizance depended entirely upon the free will of other parties over whom defendant had no control, and it is contrary to elemental principles of the criminal law that an act which is not criminal at the time of its commission may be converted into a crime at a subsequent time by the independent action of other persons.

Analogy appears in United States v. Fox, 95 U.S. 670, 24 L.Ed. 538. In that case defendant was charged and convicted of the violation of a statute described by the Supreme Court as follows:

" 'Every person respecting whom proceedings in bankruptcy are commenced, either upon his own petition or that of a creditor,' who within three months before their commencement, 'under the false color and pretense of carrying on business, and dealing in the ordinary course of trade, obtains on credit from any person any goods or chattels with intent to defraud,' shall be punished by imprisonment for a period not exceeding three years."

In holding the statute in question unconstitutional, the United States Supreme Court said:

"Upon principle, an act which is not an offence at the time it is committed cannot become such by any subsequent independent act of the party with which it has no connection. By the clause in question, the ob-

taining of goods on credit upon false pretences is made an offence against the United States, upon the happening of a subsequent event, not perhaps in the contemplation of the party, and which may be brought about, against his will, by the agency of another. The criminal intent essential to the commission of a public offence must exist when the act complained of is done: it cannot be imputed to a party from a subsequent independent transaction. * * * To legislate for the prevention of frauds in either of these particulars, when committed in contemplation of bankruptcy, would seem to be within the competency of Congress. Any act committed with a view of evading the legislation of Congress passed in the execution of any of its powers, or of fraudulently securing the benefit of such legislation, may properly be made an offence against the United States. But an act committed within a State, whether for a good or a bad purpose, or whether with an honest or a criminal intent, cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States. An act not having any such relation is one in respect to which the State can alone legislate. * * * It is quite possible that the framers of the statute intended it to apply only to acts committed in contemplation of bankruptcy; but it does not say so, and we cannot supply qualifications which the legislature has failed to express."

In United States v. Dietrich, C.C., 126 F. 676, defendant was charged with having received a bribe for procuring or aiding a person to procure appointment to a public office. The defendant had been elected senator for the state of Nebraska, and it was charged that on July 8, 1901, he accepted a sum of money as payment for aid promised to one Jacob Fisher in procuring an appointment as postmaster at Hastings, Nebraska. On the date charged in the indictment it appeared that defendant, although duly elected to the office of Senator, had not been seated in that office. In passing upon the right to convict the defendant under such circumstances, Van Devanter, J., said (126 F. loc. cit. 685):

"This is a prosecution for a criminal offense. To be punishable, the act charged must have possessed at the time when its commission was complete, every element necessary to its criminality under the statute. A completed act which is not an offense at the time of its commission cannot become such by any subsequent act of the party charged, or of another, with which it has no connection; and this is true whether the first act was done for a good or bad purpose. * * *

"Because membership in Congress is indispensable, under the statute, to the commission of the offense here charged, and because, upon the facts admitted by counsel for the government, it is clear to us that the defendant was not a member of Congress at the time when it is proposed to be proved that he committed the acts described in the indictment, the jury will be directed to return a verdict of not guilty."

To the same effect, In re Yee Gee, D.C., 83 F. 145; United States v. Crittenden, D. C., 24 F.Supp. 84.

■ The government relies upon Spivey v. United States, 5 Cir., 109 F.2d 181, 185, in which conviction was sustained for use of the mails to defraud, for conspiracy to defraud the government by obtaining payment and allowance of false and fraudulent claims and also on separate counts of the same indictment for the making of false and fictitious statements in violation of Section 80 (upon which this indictment is laid). The opinion of the court does not purport to detail the facts disclosed by the evidence in the case and it does not appear from the opinion that the defendants presented or that the court considered the point which we have found controlling in this case.[3]

United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598, is also cited, but we think without relevance. There the defendants were shown to have knowingly made false statements in reports to an agency of the government in respect to a matter within its jurisdiction and the point involved in this case was not involved. The government also cites mail fraud cases like Corbett v. United States, 8 Cir., 89 F. 2d 124, in which convictions are sustained

---

[3] The court commented as to the counts under section 80: "Besides, if these counts be considered defective, this would not avail appellant, for the sentences imposed with regard to them, were made to run concurrently with sentences imposed on other counts which were sufficient to sustain and carry the total sentence to be served."

although the defendants made no use of the mail themselves and where such use merely contributed to execution of the scheme. We do not deem them in point, and we have found no case which lends support to the conviction of this defendant for acts which were not within the prohibition of the federal statute at the time it is charged that he committed them. For the reasons and on the ground indicated, the judgment in No. 12,211 is reversed.

Decision as to the judgment appealed from in No. 12,210 is controlled by identically the same considerations, and that judgment is also

Reversed.