## UNITED STATES *v.* GILLILAND ET AL.*

No. 245.   Argued January 10, 1941.—Decided February 3, 1941.

---

*In *United States* v. *Cohn,* 270 U. S. 339, first paragraph of headnotes, change "§ 65" to § 35.—REPORTER.

*Mr. Herbert Wechsler,* with whom *Solicitor General Biddle, Assistant Attorney General Rogge,* and *Messrs. Ben F. Foster, George F. Kneip,* and *Fred E. Strine* were on the brief, for the United States.

*Mr. F. W. Fischer* for appellees.

88

Mr. Chief Justice Hughes delivered the opinion of the Court.

The District Court sustained a demurrer to ten counts of an indictment and the Government appeals. 18 U. S. C. 682.

There were eleven counts in the indictment, the first of which, a conspiracy count, the District Court found good. The other counts now before us were based on § 35 of the Criminal Code. 18 U. S. C. 80.[1] Eight of these counts charged in substance that defendants had willfully caused to be made and used verified reports falsely and fraudulently stating the amount of petroleum produced from certain oil wells, and the other two counts made a similar charge with respect to verified reports as to the amount of petroleum received from certain producers.

The District Court held that these substantive counts did not state an offense under § 35 of the Criminal Code as amended by the Act of June 18, 1934. 48 Stat. 996. The court plainly rested its decision upon its construction of the statute and hence direct appeal to this Court is properly brought. We are concerned only with the correctness of this construction and not with the mere interpretation of the indictment as a pleading. *United States* v. *Patten,* 226 U. S. 525, 535; *United States* v. *Birdsall,* 233 U. S. 223, 230; *United States* v. *Kapp,* 302 U. S. 214, 217; *United States* v. *Borden Co.,* 308 U. S. 188, 195.

Section 35, as amended, makes it a crime knowingly and willfully to "make or cause to be made any false or fraudulent statements or representations," or to "make or use or cause to be made or used any false bill, receipt,

---

[1] See Act of April 4, 1938, c. 69, 52 Stat. 197.

voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, in any matter within the jurisdiction of any department or agency of the United States." The reports containing the alleged false and fraudulent statements in this instance were charged to have related "to a matter within the jurisdiction of the Department of the Interior, the Secretary of the Interior, and the Federal Tender Board No. 1, Kilgore, Texas."

By the Act of February 22, 1935, 49 Stat. 30, 31,[2] the so-called "Hot Oil" Act, the transportation in interstate commerce from any State of "contraband oil" produced therein was prohibited, such oil being that "produced, transported, or withdrawn from storage" in excess of the amounts permitted under the laws of the State or regulations duly made by its agencies. The President was authorized to prescribe regulations for the enforcement of the Act, including the requirement of "reports, maps, affidavits, and other documents relating to the production, storage, refining, processing, transporting, or handling of petroleum and petroleum products." Under this authority the President designated the Secretary of the Interior as his agent, and the latter promulgated regulations which the President approved. There was thus set up Federal Tender Board No. 1, to be located at Kilgore, Texas, for the East Texas Field and monthly reports on forms approved by the Secretary were required to be filed with the Board.[3]

If the provision of § 35, under which the indictment is laid, be construed according to its literal and natural import, it is manifest that the statute covers the offenses

---

[2] 15 U. S. C. 715–715d.

[3] Executive Orders No. 6979, issued February 28, 1935; No. 6980–B, Regulation XIV, approved March 1, 1935; No. 6980–C, approved March 1, 1935.

charged in the substantive counts. The affidavits and reports, as described in the indictment, containing statements alleged to be false and fraudulent, were made and used in a matter within the jurisdiction of a department and agency of the United States. Nor can the statute be deemed to be invalid because of indefiniteness. The affidavits and reports required had been sufficiently described and the duty enjoined had been adequately defined. Any one presenting the required affidavits and reports to the Board set up under the pertinent regulations was suitably charged with notice of the consequence of knowingly and willfully including therein any false and fraudulent statements.

Defendant's contention, which the District Court sustained, is that the broad language of the statutory provision here involved should be restricted by construction so as to apply only to matters of a nature similar to those with which other provisions of § 35 deal, "such as claims against, rights to, or controversies about funds involved in 'operations of the Government,'" that is, to matters in which the Government has some financial or proprietary interest. This contention is sought to be supported by the doctrine of *ejusdem generis* and the construction given to § 35 prior to the amendment of 1934, and by reference to the incongruity of the penalty prescribed for violation of § 35 as contrasted with the penalty prescribed by the Act of February 22, 1935, to the enforcement of which the requirements in question were directed. Defendant also presents the contention, upon which the District Court did not pass, that the Act of February 22, 1935, was intended to cover the entire subject of the exclusion of "hot oil" from interstate commerce and consequently operated as a repeal of all other provisions dealing with that matter.

Before the amendment of 1934, § 35, after referring to the presentation of claims against the government which were known to be false or fraudulent, provided:

"or whoever, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, or for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry; . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both." [4]

Distinguishing that provision from § 37, the conspiracy section of the Criminal Code which by its terms extended broadly to every conspiracy "to defraud the United States in any manner or for any purpose," [5] this Court held that § 35 which used the word "defrauding" in connection with "cheating and swindling" should be construed "as relating to the fraudulent causing of pecuniary or property loss" to the Government. And that meaning was deemed to be emphasized by the context found in other provisions of § 35. *United States* v. *Cohn,* 270 U. S. 339, 346, 347.

The Act of June 18, 1934, [6] amended § 35 so that in place of the portion quoted above there were substituted these words:

"or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or

---

[4] 40 Stat. 1015.

[5] See *Haas* v. *Henkel,* 216 U. S. 462, 479; *Hammerschmidt* v. *United States,* 265 U. S. 182, 188.

[6] 48 Stat. 996.

fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder; . . . shall be fined" etc.

The amendment eliminated the words "cheating and swindling" and broadened the provision so as to leave no adequate basis for the limited construction which had previously obtained. The statute was made to embrace false and fraudulent statements or representations where these were knowingly and willfully used in documents or affidavits "in any matter within the jurisdiction of any department or agency of the United States." In this, there was no restriction to cases involving pecuniary or property loss to the government. The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction.

The rule of *ejusdem generis* is a familiar and useful one in interpreting words by the association in which they are found, but it gives no warrant for narrowing alternative provisions which the legislature has adopted with the purpose of affording added safeguards. "The rule of *'ejusdem generis'* is applied as an aid in ascertaining the intention of the legislature, not to subvert it when ascertained." *Texas* v. *United States,* 292 U. S. 522, 534.

If the language of the amended section could be deemed ambiguous, the legislative history of the amendment would dispel any doubt as to the congressional purpose. Legislation had been sought by the Secretary

of the Interior to aid the enforcement of laws relating to the functions of the Department of the Interior and, in particular, to the enforcement of regulations under § 9 (c) of the National Industrial Recovery Act of 1933 [7] with respect to the transportation of "hot oil." The Secretary's effort was due, as he stated, to the lack of a law under which prosecutions might be had "for the presentation of false papers." [8] The bill which was passed by Congress, however, was amended in its final stages so as to require "intent to defraud the United States." [9] This bill was returned by the President without his approval for the reason that the offense as defined was covered by existing law which provided for more severe punishment than that proposed by the bill.[10] Another measure was then proposed by the Secretary of the Interior which would obviate these objections and accomplish the purpose of reaching the presentation of false papers in relation to "hot oil." A bill was then passed and approved which included, with other amendments of § 35 the provision now before us, omitting the limiting words which had been deemed to make the former provision applicable only to cases where pecuniary or property loss to the government had been caused.[11] The report of the Judiciary Committee of the Senate stated that the amendment in question had been proposed by the Department of the Interior with the purpose "of reaching a large number of cases involving the shipment of 'hot'

---

[7] 48 Stat. 195, 200.

[8] See letter of the Secretary of the Interior to the Chairman of the Judiciary Committee of the Senate dated February 7, 1934. S. Rep. No. 288, 73d Cong., 2d sess.; 78 Cong. Rec., Pt. 3, p. 2859. See, also, H. Rep. No. 829, 73d Cong., 2d sess.

[9] 78 Cong. Rec., Pt. 4, pp. 3724, 3725; Pt. 6, p. 5746.

[10] 78 Cong. Rec., Pt. 6, p. 6778.

[11] 78 Cong. Rec., Pt. 10, pp. 11270, 11271; Pt. 11, p. 11513. Act of June 18, 1934, 48 Stat. 996.

oil, where false papers are presented in connection therewith." [12]

The fact that the Secretary of the Interior was then seeking aid in the enforcement of § 9 (c) of the National Industrial Recovery Act, which this Court later found to be invalid (*Panama Refining Co. v. Ryan,* 293 U. S. 388), in no way affects the present application of the statute. Its provisions were not limited to the enforcement of § 9 (c) of the National Industrial Recovery Act but were enacted with appropriate breadth so that they at once applied to the presentation of affidavits, reports, etc., required by the subsequent Act of February 22, 1935, and the regulations duly prescribed thereunder. In the light of the text of the Act of 1934, amending § 35, and its legislative history, it is also clear that the fact that the penalty prescribed by § 35 was greater than that fixed by the Act of February 22, 1935, has no significance in connection with the construction and application of the former. The matter of penalties lay within the discretion of Congress. Section 35 covered a variety of offenses and the penalties prescribed were maximum penalties which gave a range for judicial sentences according to the circumstances and gravity of particular violations.

Similarly lacking in merit is the contention that the Act of February 22, 1935, operated to repeal § 35 as amended in 1934, so far as the latter applied to affidavits, documents, etc., presented in relation to "hot oil." There was no express repeal and there was no repugnancy in the subject matter of the two statutes which would justify an implication of repeal. The Act of 1934, with its provision as to false and fraudulent papers, has its place as a fitting complement to the Act of 1935 as well as to other statutes under which, in connection with the au-

---

[12] S. Rep. No. 1202, 73d Cong., 2d sess.

thorized action of governmental departments or agencies, the presentation of affidavits, documents, etc., is required. There is no indication of an intent to make the Act of 1935 a substitute for any part of the provision in § 35. See *Posadas* v. *National City Bank,* 296 U. S. 497, 503, 504; *United States* v. *Borden Company,* 308 U. S. 188, 198, 199.

The judgment sustaining the demurrer to counts 2 to 11, inclusive, is reversed and the cause is remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

Mr. Justice Murphy took no part in the consideration and decision of this case.