**UNITED STATES v. SANDERS.**

Cr. No. 8032.

District Court, S. D. Texas, Houston Division.

June 6, 1941.

Douglas W. McGregor, U. S. Atty., and J. Harold Bates, Asst. U. S. Atty., both of Houston, Tex., for plaintiff.

Bernard A. Golding, of Houston, Tex., for defendant.

ALLRED, District Judge.

The indictment is based on that portion of Sec. 35 of the Criminal Code, 18 U.S. C.A. 80,[1] making it an offense knowingly and wilfully to "make or cause to be made * * * any false or fraudulent statements or representations * * * in any matter within the jurisdiction of any department or agency of the United States * * *." The indictment charges, in substance, that defendant "did unlawfully, knowingly and fraudulently make and present, and cause to be made and presented to the Veterans Administration, a department and agency of the United States, a false and fraudulent statement and representation, in a matter within the jurisdiction of the said Veterans Administration, a department and agency of the United States."

The indictment further alleges the pendency in the county court of Grimes County, Texas, of a guardianship proceeding of the person and estate of one Otis Monroe Peters, a person of unsound mind and a veteran of the World War entitled to receive financial benefits from the United States; that James Monroe Peters was duly appointed guardian and, as such, has been receiving financial benefits from the United States for many years; that said guardian was required by law to submit reports and accounts to the Veterans Administration, showing the application of payments received by him for the benefit of the ward in order to continue receiving such benefits; that about July 17, 1928, the defendant, an attorney engaged in the practice of law, fraudulently obtained a check from his client (the guardian) in the sum of $2,500 on the pretense that said amount of money was to be invested in a note for the benefit of the estate but which said sum defendant unlawfully and fraudulently converted to his own use; that thereafter, on or about August 13, 1938, defendant prepared and submitted to the county court of Grimes County, Texas, *and to the Veterans Administration* an annual account made by the guardian showing that there was on hand, belonging to the estate, among other property, a note made by one J. A. Hendrix in the principal sum of $2,500, purchased by the guardian under proper court orders, secured by vendor's and deed of trust liens against real estate worth more than double the amount; and showing the collection of interest upon said note from year to year; and that by the making and presentation to the Veterans Administration of such account, defendant procured the continuance of payments by the United States to the guardian.

The purported "true and correct annual report" of the guardian, allegedly made and presented to the Veterans Administration, by defendant, is set out in haec verba. It shows on its face to be a report made to the county judge of Grimes County in Cause No. 1218. It is signed by defendant as attorney for the guardian; and is also signed and sworn to by the guardian, now alleged to be deceased. It covers the period from July 1, 1937, to July 1, 1938, and shows, among other things, the receipt of $200 as "interest on Hendrix's note." It also contains an affidavit by the cashier of the Citizens State Bank of Houston to the effect that the Hendrix note of $2,500 was exhibited to said cashier as the property of the estate.

It is then alleged that the statements in the report to the effect that the estate owned and held the vendor's lien note, and that its payment was secured by a vendor's lien and deed of trust liens against improved real estate worth more than double the amount of said notes, was false, fraudulent and untrue, and known by defendant to be false, fraudulent and untrue at the time he made and presented the aforesaid accounting to the Veterans Administration, in that said Hendrix note was false, fictitious and fraudulent, and was not purchased by the guardian under proper court orders, and was not secured in its payment by such liens; and that in truth and in fact defendant, while acting as attorney for the guardian, pretended to invest said sum of $2,500 in the Hendrix note and secured from the guardian a check for the sum of $2,500 payable to defendant, which check defendant cashed and appropriated to his own use and benefit.

Defendant demurs to the indictment and has filed a motion to quash upon various grounds, which will be discussed as stated.

Defendant's principal contention is that the indictment charges no offense against him; that under Sec. 80, Title 18, U.S.C. A., even after the amendment of 1934,

---

[1] As amended by Act of April 4, 1938, c. 69, 52 Stat. 197.

438

"the gist of the offense * * * is a fraud or false claim against the government which causes pecuniary or property loss to the government." [2] This contention, and the line of cases upon which it is based, was permanently disposed of by the Supreme Court in United States v. J. W. Gilliland et al.,[3] 312 U.S. 86, 61 S. Ct. 518, 85 L.Ed. 598. See, also United States v. Goldsmith, 2 Cir., 108 F.2d 917; United States v. Mellon et al., 2 Cir., 96 F.2d 462.

It is provided in § 450, Title 38, U.S.C. A. (a part of the World War Veterans Act of 1924, as amended, Title 38, § 421 et seq.), with reference to payment of compensation, adjusted compensation, etc., in part, as follows: "Whenever it appears that any guardian, curator, conservator, or other person, in the opinion of the Administrator, is not properly executing or has not properly executed the duties of his trust or has collected or paid, or is attempting to collect or pay, fees, commissions, or allowances that are inequitable or in excess of those allowed by law for the duties performed or expenses incurred, or has failed to make such payments as may be necessary for the benefit of the ward or the dependents of the ward, then and in that event the Administrator is empowered by his duly authorized attorney to appear in; the court which has appointed such fiduciary, or in any court having original, concurrent, or appellate jurisdiction over said cause, and make proper presentation of such matters: Provided, That the Administrator, in his discretion, may suspend payments to any such guardian, curator, conservator, or other person *who shall neglect or refuse, after reasonable notice, to render an account to the Administrator from time to time showing the application of such payments for the benefit of such incompetent or minor beneficiary, or who shall neglect or refuse to administer the estate according to law."* (Italics supplied.)

In addition to this authority, the Administrator is authorized by § 426, Title 38, U.S.C.A., to promulgate rules and regulations necessary or appropriate to carry out the purposes of the Act. Pursuant to

that authority the Administrator has promulgated rules and regulations, generally prescribing, among other things, the duty of the chief attorney and of his subordinates to investigate and check into the administration of estates of incompetent persons. A specific rule, § 20.5322, 38 Code of Fed. Regulations, reads as follows: "Accountings and certificates of balance. Except in cases where accountings are not required as explained in 20.5305, *accountings will be obtained at least once a year by the chief attorney from all guardians* of Veterans' Administration beneficiaries appointed by the courts within the territory of his office. These accountings will be obtained direct from the guardian. When the State courts require accounting once a year, the chief attorney will advise the guardian 60 days prior to the date his account is due in the court of appointment, and forward at the same time two copies of Form 4706 series. The original may be used by the guardian in submitting his account to the court, and a copy forwarded duly certified by the clerk of the court as a true copy of the account filed with the court, together with a certification from the bank or trust company in which the estate of the ward is deposited, showing a balance. Account Form 4706c will be used in lieu of Form 4706, revised, in those regional areas where the use of Form 4706, revised, is not practicable. *In case these Forms 4706, revised, or 4706c cannot be used in the court,* the chief attorney will prepare a form suitable to meet the requirements of the State statute *or will use regular form supplied by court,* and *will require that the guardian forward a copy of the form of account as submitted to the court with the certificate of balance at the same time the original is filed with the court.* As stated above, accountings will be secured in all cases at least once a year, unless waived by the administrator." (Italics supplied.)

■ Here, as in the Gilliland case, supra, broad statutory powers are given to the administrative agency charged with enforcement of the act. Among these powers is the right to require reports from the guardian. The statute not only au-

[2] Citing among other cases, United States v. Cohn, 1925, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616.

[3] Reversing the trial court's decision, D.C., 35 F.Supp. 181, which was based upon United States v. Keitel, 211 U.S.

370, 29 S.Ct. 123, 125, 53 L.Ed. 230; Hammerschmidt v. United States, 265 U. S. 182, 44 S.Ct. 511, 512, 68 L.Ed. 968. In this decision Judge Dawkins discussed and sought to distinguish Spivey v. United States, 5 Cir., 109 F.2d 181, 183.

thorizes the director to appear in State court guardianship proceedings, but provides that he may suspend payments to any guardian who shall neglect or refuse, after reasonable notice, to render an account. This certainly carries with it the authority to require the rendering of such an account to the administrator from time to time. Here, as in the Gilliland case, the administrator, pursuant to statutory authority, has promulgated rules requiring the filing of accounts, in this instance a copy of the annual report filed with the State court.

Considerable confusion seems to have arisen because the alleged false report set out in the indictment shows upon its face to be addressed to the Judge of the county court of Grimes County, Texas, not to the administrator; *but the government alleges that the report was made and presented to the Veterans Administration.* The rule set out above accounts for the fact that the report is addressed to the county judge, rather than to the Veterans Administration.

But, defendant says, the indictment does not show that the matters alleged are "within the jurisdiction of any department or agency of the United States," citing United States v. Keitel,[4] D.C., 157 F. 396, 406, discussing jurisdiction as used in connection with claims, prosecution under § 81, Title 18. The Court says: "The word 'jurisdiction,' must be here used in its legal sense, meaning authority to hear and determine a cause. Doniels v. Tearney, 102 U.S. 415, 418, 26 L.Ed. 187; Simmons v. Saul, 138 U.S. 439, 454, 11 S.Ct. 369, 34 L.Ed. 1054."

■ The cases cited deal with *court* jurisdiction. In my judgment they have no application here. It seems to me that the word "jurisdiction" was not used in Sec. 80, Title 18, in a strictly legal and technical sense. Rather I think it means the power to deal with a subject matter.[5] Certainly by the narrow test laid down by the district court in the Keitel case, the Secretary of the Interior would not have had jurisdiction in the Gilliland case, supra, to adjudicate matters in connection with enforcement of the Connally Act, 49 Stat. 30, 31, 15 U.S.C.A. § 715 et seq.; yet

Chief Justice Hughes, [312 U.S. 86, 61 S.Ct. 521, 85 L.Ed. 598], after discussing the statutory provisions and the rules promulgated under the act, says: "The affidavits and reports, as described in the indictment, containing statements alleged to be false and fraudulent, were made and used in a matter within the jurisdiction of a department and agency of the United States."

Here a careful check by the Veterans Administration upon the condition of estates of incompetent persons, to determine the application of payments already made, whether additional payments shall be suspended and whether the estate is being administered according to law, is just as essential to the proper administration of the Act as is the filing of reports with the Federal tender board to the enforcement of the Connally Act.

Defendant cites United States v. Crittenden, D.C. N.Y., 24 F.Supp. 84. Six counts in the indictment charged the making of false affidavits attached to an account filed in the State court. The remaining six counts charged procuring of the presentation of the false affidavit to the Veterans Administration. It is not entirely clear, but it appears that the district court may have gone off on the fact that the New York Civil Practice Act required, as does the Texas law, Art. 4227a, Vernon's Ann.Civ.St.Tex., that the *clerk* should send a copy of the guardian's act to the Veterans Administration. In any event, the Crittenden case was decided before United States v. Gilliland, supra.

■ In any event, I cannot agree with Judge Burke of the New York court that the presentation of the fraudulent accounts *by a defendant* (if his opinion goes that far) to the Veterans Administration was not in a matter within the jurisdiction of the Veterans Administration. To so hold would, in my opinion, nullify the wholesome provisions of the World War Veterans Act calling for necessary supervision over and checking of the accounts of guardians of incompetent persons; and would nullify the rules and regulations promulgated by the administrator, authorized by the statute. If the administrator has a right (and he does) to require the filing of

---

[4] It is to be noted that in affirming as to the second count in the indictment, 211 U.S. 370, 371, 29 S.Ct. 123, 53 L. Ed. 230, the Supreme Court did not approve this holding of the district court. Rather the contrary is implied.

[5] Compare Reynolds v. United States, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353.

440

accounts with the Veterans Administration, certainly any false statement made in connection with such an account, where it is presented to the Veterans Administration, comes under the clear provisions of Sec. 80, Title 18.

Secondly, defendant attacks that portion of the indictment which charges that the defendant "caused to be made and presented" to the Veterans Administration the alleged false and fraudulent statement and reports. It will be noted that these words are preceded by the allegation that the defendant did unlawfully, knowingly and fraudulently "make and present" such false and fraudulent statement. There may be something to defendant's contention that the Government should have alleged whom defendant caused to make and present the statement. Miller v. United States, 7 Cir., 136 F. 581; United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819. Upon argument of the demurrer, however, the Government stated that it expected to show that the defendant individually and personally made and presented the statement in question to the Veterans Administration. This matter may, therefore, be disposed of at the time of trial.

Likewise, it will not be necessary to discuss the many cases dealing with Sec. 81, Title 18, since the Government stated upon oral argument that it was proceeding and standing upon Sec. 80.

The demurrer and motion to quash will be overruled.