UNITED STATES v. GANZ et al.

Criminal Nos. 15977–15979.

District Court, D. Massachusetts.

Dec. 22, 1942.

Edmund J. Brandon, U. S. Atty., and Joseph J. Gottlieb, Asst. U. S. Atty., both of Boston, Mass., for the United States.

Alfred Santosuosso, of Boston, Mass., for defendant.

HEALEY, District Judge.

Three indictments have been returned against the defendant, Louis Ganz, all of which involve the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq.

Indictment Number 15977 alleges violations of Section 35 (A) of the Criminal Code, 18 U.S.C.A. §§ 80, 83–85, by the keeping of false records and the issuance of false bills concerning sales within the ju-

risdiction of the Office of Price Administration. Indictment Number 15978 alleges violations of the Emergency Price Control Act of 1942 by sales of used tires at prices higher than those provided in Maximum Price Regulation No. 107 and by failure to keep complete and accurate records of such sales. Indictment Number 15979 alleges conspiracy by the defendant, Ganz, and others to violate the Emergency Price Control Act of 1942 and the regulations promulgated thereunder.

To each indictment there have been filed a demurrer and motion to quash.

There have been similar indictments found against Andrew P. Schiaffino (Numbers 15982, 15983, 15979), Joseph Schiaffino (Numbers 15981, 15984, 15979), Colonial Auto Exchange, Inc. (Numbers 15975, 15976, 15979), Jacob Siegal (Numbers 16004, 16005), and Isadore Solomon (Numbers 16006, 16007). All of these defendants have filed demurrers and motions to quash based on substantially the same grounds relied on by the defendant, Louis Ganz. All of these motions and demurrers were consolidated for hearing and were argued at the same time as were the motions and demurrers filed by Ganz. Therefore, although this opinion is specifically directed to the objections raised by the defendant, Ganz, the principles enunciated are equally applicable in the cases involving the other named defendants.

The issues raised by defendant's demurrers and motions to quash may be briefly stated. The objections raised by the defendant to the indictment for violation of Section 35 (A) of the Criminal Code are substantially (1) that the indictments allege the presentation of false bills to persons other than a department or agency of the United States, and therefore are not violative of Section 35 (A) of the Criminal Code, (2) that the criminal provisions of the Emergency Price Control Act of 1942, have superseded Section 35 (A) in matters involving falsification of records or bills required by the Emergency Price Control Act of 1942 or by the regulations promulgated thereunder, (3) that there is no allegation that a "warning notice" required by Section 205 (f) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 925 (f), was sent to the defendants prior to the commission of the acts for which they have been indicted, and (4) that there is no allegation that the Price Administrator certified the facts to the Attorney General in accordance with Section 205 (b) of the Act.

To the indictments for violation of the Emergency Price Control Act of 1942, and for conspiracy to violate said Act, defendant interposes the third and fourth objections enumerated above which were raised to the indictment for violation of Section 35 (A) of the Criminal Code.

The defendant attacks the indictment for alleged violations of Section 35 (A) of the Criminal Code, 18 U.S.C.A. § 80, on the ground that it alleges that false bills were presented to a person other than a department or agency of the United States. The defendant contends that unless the false bills were presented to a department or agency of the United States there was no offence indictable under Section 35 (A). Section 35 (A), as amended, is as follows: "Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

The indictment alleged the issuance by the Administrator of the Office of Price Administration of Maximum Price Regulation No. 107, Section 1315.1355 of which reads as follows:

"(a) Every person engaged in the business of selling used tires or tubes not mounted as part of the equipment of a vehicle, shall furnish the purchaser with a

written statement setting forth the price, size, and type of the tire or tube sold, either stating that the tire sold is a basic tire carcass or giving the thickness in 32nd inches of the tread design depth at the shallowest point, and reciting whether, to the knowledge of the seller, the tire or tube, as the case may be, has been regrooved, is a used retreaded or recapped tire, requires repair, or has been vulcanized or repaired, together with a description of the extent of vulcanizing or repairing if it was done.

"(b) Every person engaged in the business of selling used tires or tubes not mounted as part of the equipment of a vehicle, shall keep for inspection by the Office of Price Administration, for a period of not less than two years, complete and accurate records of every sale of such articles including the date thereof, the name and address of the purchaser, the price per unit, the quantity, size, and type of tires or tubes sold, indicating whether each tire was a basic tire carcass or the thickness in 32nd inches of the tread design depth at the shallowest point, and specifying whether the tire or tube, to the knowledge of the seller, needed repair or had been vulcanized or repaired, and if so to what extent, and whether the tire had been regrooved or retreaded or recapped.

"(c) Every person engaged in the business of selling used tires or tubes not mounted as part of the equipment of a vehicle, shall keep for inspection by the Office of Price Administration, for a period of not less than two years, complete and accurate records of (1) all acquisitions after March 7, 1942 of used tires or tubes, showing the date of each purchase or acquisition, the name and address of the person from whom acquired, the price paid, and the number of tires and tubes acquired, indicating whether they were truck or passenger car tires and tubes and whether such tires were basic tire carcasses of the thickness in 32nd inches of the tread design depth at the shallowest point, and (2) the stocks on hand as of March 7, 1942, and the last day of each succeeding month thereafter.

"(d) Such persons shall submit such reports to the Office of Price Administration as it may from time to time require."

Some of the counts of the indictment allege in part that the defendant knowingly and wilfully made and delivered to a certain person a false invoice listing the sale price of used tires sold to such person at a price less than the actual sale price.

The other counts of the indictment allege the wilfull making and keeping of false records of such sales. The indictment also alleges that the defendant was and is engaged in the business of selling used tires and tubes.

It is clear from the indictment that the defendant made and kept the alleged records for inspection by the Office of Price Administration, an agency of the United States. It follows that such records were made in a "matter within the jurisdiction of" a "department or agency of the United States." Therefore, the counts which allege the keeping of these false records obviously are within Section 35 (A) of the Criminal Code, 18 U.S.C.A. § 80.

It also seems clear that the alleged issuance of the false invoices or bill is within the purview of Section 35 (A). Section 35 (A) makes criminal the making or using of "any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States." Prior to the amendment of June 18, 1934, 48 Stat. 996, 18 U.S.C.A. § 80, it was a requisite of criminal liability that such falsifying be done "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof." This language is no longer in the statute. The Amendment of 1934 also added the words "in any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C.A. § 80. Thus that section was broadened "so as to leave no adequate basis for the limited construction which had previously obtained." United States v. Gilliland, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598. Giving to Section 35 (A) its literal and natural meaning, it is clear that the offenses charged fall squarely within its provisions. There is no requirement that the false bills be presented to an agency or department of the United States. The only requirement is that such false bills themselves be made in a "matter within the jurisdiction" of such department or agency. United States v. Mellon, 2 Cir., 96 F.2d 462, 463. It is apparent from the indictment that the alleged false bills were made in pursuance of Section 1315.1355

of Maximum Price Regulation No. 107, and thus within the jurisdiction of the Office of Price Administration. That this construction of Section 35 (A) is the proper one is further apparent from a consideration of that section as a whole. The first clause of the section makes it a criminal offence to present a false claim against the United States. That clause specifically provides that in order that it be a criminal offence, such claim must be presented to a department or officer of the United States. The clause material to the present case, however, does not specifically provide that such false bill be presented to a department or agency of the United States, but merely that such false bill be made in a matter within the jurisdiction of a department or agency of the United States.

■ Another objection raised by the defendant is that Section 35 (A) is superseded by the provisions of the Emergency Price Control Act of 1942 insofar as false statements of the kind here involved are concerned. The apparent basis for this contention is that Section 205 (b) of the Emergency Price Control Act of 1942 imposes criminal sanctions for false statements made with reference to the sale of tires. This argument was adequately dealt with in United States v. Gilliland, supra. In that case, the defendant was indicted for violation of Section 35 (A) of the Criminal Code in that he presented false reports to a Federal Tender Board. Such reports were required by regulations promulgated by the Secretary of Interior under authority delegated to him by the President of the United States pursuant to the provisions of the "Hot Oil" Act (Act of February 22, 1935, 49 Stat. 30, 15 U.S.C.A. § 715 et seq.). Section 6 of the "Hot Oil" Act, 15 U.S.C.A. § 715e, provided criminal penalties for knowingly violating "any provision of this Act [chapter] or any regulation prescribed thereunder." The defendant contended in part that the "Hot Oil" Act repealed Section 35 (A) of the Criminal Code insofar as affidavits and other reports required by the Act were concerned. In rejecting this contention, the Supreme Court, at pages 95, 96 of 312 U.S., at page 523 of 61 S.Ct., 85 L.Ed. 598, said: "Similarly lacking in merit is the contention that the Act of February 22, 1935, operated to repeal Section 35 as amended in 1934, so far as the latter applied to affidavits, documents, etc., presented in relation to 'hot oil'. There was no express repeal and there was no re-

pugnancy in the subject matter of the two statutes which would justify an implication of repeal. The Act of 1934, with its provision as to false and fraudulent papers, has its place as a fitting complement to the Act of 1935 as well as to other statutes under, which, in connection with the authorized action of governmental departments or agencies, the presentation of affidavits, documents, etc., is required. There is no indication of an intent to make the Act of 1935 a substitute for any part of the provision in Section 35."

It is my opinion that this principle is governing in the present cause.

■ The defendant contends that the indictment is defective in that it fails to allege that a warning notice, within the meaning of Section 205 (f) (2), was sent to the defendant prior to the institution of these criminal proceedings. I am of the opinion that such a warning notice is not a condition precedent to prosecution for criminal violations involving the Act. It is manifest from a mere reading of Section 205 (f) (2) that such a warning notice is a condition precedent only to proceedings for suspension of a license provided for by Section 205 (f) (2). Section 205 (f) (2), insofar as it is here material, is as follows: (2) "Whenever in the judgment of the Administrator a person has violated any of the provisions of a license issued under this subsection, or has violated any of the provisions of any regulation, order, or requirement under section 2 or section 202 (b) [sections 902 or 922 of this Appendix], or any of the provisions of any price schedule effective in accordance with the provisions of section 206 [section 926 of this Appendix], which is applicable to such person, a warning notice shall be sent by registered mail to such person. If the Administrator has reason to believe that such person has again violated any of the provisions of such license, regulation, order, price schedule, or requirement after receipt of such warning notice, the Administrator may petition any State or Territorial court of competent jurisdiction, or a district court subject to the limitations hereinafter provided, for an order suspending the license of such person for any period of not more than twelve months."

Suspension of license is but one of four sanctions provided for by Section 205. Section 205 (a) provides for injunctive relief. Section 205 (b) makes provision for criminal prosecution. By Section 205 (e)

the purchaser is granted a civil remedy against violators. Section 205 (f) (2) provides for suspension of license. Yet in none of these subsections, except subsection (f) (2), is there mention of a warning notice.

Defendant's final contention is that the indictment is defective in that it fails to allege that the Administrator certified the facts to the Attorney General under Section 205 (b). Section 205 (b) provides as follows: "Any person who willfully violates any provision of section 4 of this Act [section 904 of this Appendix], and any person who makes any statement or entry false in any material respect in any document or report required to be kept or filed under section 2 or section 202 [sections 902 or 922 of this Appendix], shall, upon conviction thereof, be subject to a fine of not more than $5,000, or to imprisonment for not more than two years in the case of a violation of section 4 (c) [section 904 of this Appendix] and for not more than one year in all other cases, or to both such fine and imprisonment. Whenever the Administrator has reason to believe that any person is liable to punishment under this subsection, he may certify the facts to the Attorney General, who may, in his discretion, cause appropriate proceedings to be brought."

 The first sentence of Section 205 (b) provides the criminal sanction for violations. This sentence is in no way qualified. The words "any person" are used. The manifest intent of Congress, gathered from this sentence, is that any person who does the prohibited acts will be subject to criminal penalty, regardless of whether or not the Administrator certifies the facts to the Attorney General. The second sentence of the section merely grants to the Administrator discretionary authority to certify the facts to the Attorney General. This is clear from the use of the word "may", since it appears from Subsection (f) of the same Section 205 that when Congress wishes to impose a mandatory obligation, it uses the word "shall". Section 205 (b) stands in clear contrast to Section 205 (a) and 205 (f) (2). Section 205 (a) grants to the Administrator himself the authority to apply for injunctive relief. For the purpose of making it clear that the same authority was not granted to the Administrator with reference to criminal prosecutions, the second sentence of Section 205 (b) was inserted. The language of this sentence merely defines the powers of the Administrator with reference to the institution of criminal proceedings. It does not limit, or in any way affect, the power of the United States Attorney to institute criminal proceedings for violations of the Act. Had Congress intended to make certification to the Attorney General a condition precedent to criminal prosecution, it could easily have done so in the language by which in Section 205 (f) (2) it made a warning notice a condition precedent to proceedings for suspension of a license. By this latter subsection Congress provided that if the court shall find that there has been a violation by a person "after the receipt of" the "warning notice", such court shall issue an order suspending the license of such person. There is no such language in Subsection (b) making certification by the Administrator a condition precedent to criminal prosecution. It follows that an allegation that the facts were certified to the Attorney General is unnecessary.

The demurrers are overruled, and the motions to quash are denied.