**McGUINNESS v. UNITED STATES.**
**No. 959.**

Municipal Court of Appeals for the
District of Columbia.

Argued Nov. 13, 1950.

Decided Dec. 1, 1950.

Curtis P. Mitchell, Washington, D. C., with whom Frank D. Reeves, B. Dabney Fox, Henry Lincoln Johnson, Jr., and J. Franklyn Bourne, all of Washington, D. C., were on the brief, for appellant.

Martin J. McNamara, Jr., Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty., William R. Glendon, Asst. U. S. Atty. and Joseph M. Howard, Asst. U. S. Atty., all of Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The question presented by this appeal is whether 18 U.S.C.A. § 3287, known as the Wartime Suspension of Limitations Act, was applicable when defendant was charged in the United States Branch of the Municipal Court with passing bad checks, a misdemeanor. The checks were made payable to the Treasurer of the United States and delivered to an agent for the War Assets Administration of the United States Government. Defendant, prosecuted by the United States Attorney for the District of Columbia, was convicted of passing eight such checks, each for less than $100, and sentenced to $100 or 90 days on each charge, to run concurrently. Defendant has appealed, assigning as error the refusal of the trial court to dismiss the informations because the statute of limitations, as interpreted by appellant, had expired when the charges were brought.

The first offense was committed November 21, 1946, and the last two December 19, 1946. Defendant was arrested May 9, 1950, was arraigned on May 10, 1950, and tried June 12, 1950. He offered no defense but stood on his motion to dismiss on the ground that the statute of limitations had run.

The general or catch-all statute of limitations for non-capital offenses is three years[1] and, unless such time was extended, the prosecution of these offenses was plainly barred by this statute. However, the trial court held, as urged by the Government, that the period was extended by the Wartime Suspension of Limitations Act by which Congress provided, effective September 1, 1948,[2] that when the United States is at war the running of any statute of limitations applicable to any offense involving fraud or attempted fraud against the United States or committed in connection with the acquisition or disposition of any real or personal property of the United States or committed in connection with the negotiation or cancellation of any contract connected with the prosecution of the war "shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress."[3] The President on December 31, 1946, proclaimed that hostilities had ceased.[4]

The defendant admittedly was prosecuted under Section 22—1410, District of Columbia Code, 1940 Edition, commonly known as the bad check law, which, like all District of Columbia statutes, was enacted by the federal Congress.[5] This statute

1. "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed." 18 U.S.C.A. § 3282.

2. This Act supplanted 18 U.S.C. § 590a (1940) which was derived from Acts Aug. 24, 1942, c. 555, § 1, 56 Stat. 747; July 1, 1944, c. 358, § 19(b), 58 Stat. 667; Oct. 3, 1944, c. 479, § 28, 58 Stat. 781.

3. "When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement,

award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress." 18 U.S.C.A. § 3287.

4. Proclamation No. 2714, 12 Fed.Reg. 1, 1947, 50 U.S.C.A.Appendix, § 601 note.

5. "Any person within the District of Columbia who, with intent to defraud, shall make, draw, utter, or deliver any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer has not sufficient funds in or credit with such bank or other depository for the payment of such

makes intent to defraud an element of the offense but provides that the delivery of a bad check shall be prima facie evidence of such intent to defraud. In each of the informations involved it was alleged that the checks were made payable to the Treasurer of the United States and delivered to an agent of the War Assets Administration, United States Government. At oral argument it was conceded by the Assistant United States Attorney that more serious charges, involving felonies, might have been brought against defendant.

Before considering the merits of the appeal, we think we should mention certain procedural questions. Defendant, not having paid the fine imposed, was committed to jail June 19, 1950. Notice of appeal to this court was filed June 24. Pending such appeal the defendant applied for a writ of habeas corpus to the United States District Court for the District of Columbia.[1] The basis for the habeas corpus petition was the same as that claimed in the appeal to this court, namely, the running of the statute of limitations. On July 6, 1950, the writ was sustained by a judge of the United States District Court and the prisoner ordered released. He was thereupon discharged from custody. However, at oral argument here, counsel stipulated that the habeas corpus writ had been ordered vacated by the same District Court judge who had issued it and that defendant thereupon was returned to custody.

 We have concluded that the Wartime Suspension of Limitations Act was not applicable to the charges against de-

fendant and hence that the statute of limitations had run when the informations were instituted. The statute refers to three categories of offenses embraced within it. The question is narrowed by the Government's concession in its brief that category (1), that covering fraud or attempted fraud against the United States or any agency thereof in any manner, is not involved here because defrauding the United States for a non-war-connected purpose or defrauding the Government at all is not an essential ingredient of the local bad check law. In other words, the offense would have been the same had the checks been received by a private individual or by the Government in connection with a peacetime activity. This concession was a necessary one under the reasoning of Marzani v. United States, 83 U.S.App. D.C. 78, 168 F.2d 133, affirmed by an equally divided court 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431, reaffirmed upon rehearing by an equally divided court 336 U.S. 922, 69 S.Ct. 513, 93 L.Ed. 1084; United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598; United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917; United States v. McElvain, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451; United States v. Noveck, 271 U.S. 201, 46 S.Ct. 476, 70 L. Ed. 904.[6] These cases did not involve the District of Columbia bad check law, but they did involve other statutes, such as the False Claims Act, wherein it was charged that defrauding the United States had resulted from the crime committed. The courts decided that statutes extending periods of limitation were to be liberally con-

check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor and punishable by imprisonment for not more than one year, or be fined not more than $1,000, or both. As against the maker or drawer thereof the making, drawing, uttering, or delivering by such maker or drawer of a check, draft, or order, payment of which is refused by the drawee because of insufficient funds of the maker or drawer in its possession or control, shall be prima facie evidence of the intent to defraud and of knowledge of insufficient funds in or credit with such bank or other depository, provided such maker or drawer

shall not have paid the holder thereof the amount due thereon, together with the amount of protest fees, if any, within five days after receiving notice in person, or writing, that such draft or order has not been paid. The word 'credit,' as used herein, shall be construed to mean arrangement or understanding, express or implied, with the bank or other depository for the payment of such check, draft, or order." Code 1940, § 22—1410.

1. No opinion for publication.

6. See United States v. Hirsch, 100 U.S. 33, 25 L.Ed. 539.

strued in favor of repose and held to apply only to cases shown to be clearly within their purposes. The conclusions were reached that the Wartime Suspension of Limitations Act and other statutes allowing longer period of limitation were not applicable.

We believe that the second and third categories of the Wartime Suspension of Limitations Act are equally inapplicable here. The second suspends the running of the ordinary statute of limitations when the offense is committed in connection with the disposition of any personal property of the United States, etc.; the third category serves as a suspension when the offense is committed in connection with the payment for, etc., of any purchase order, etc., connected with or related to the prosecution of the war. To us it seems clear that while the bad checks given in the present case may have resulted in offenses coming within the ambit of all three categories of the extension statute none of such offenses was an essential ingredient of a violation of the local bad check law. It is of some significance that the Government alleged in each of the informations only that the check involved was made payable to the Treasurer of the United States and was delivered to the agent of the War Assets Administration. The statement of proceedings and evidence states that the informations also alleged that the checks covered the purchase, under veterans' preference, of certain surplus articles. In fact, however, the informations contained no such allegations, and proof thereof was unnecessary for conviction.

█ Furthermore we believe that the legislative history of the legislation confirms our view that the Suspension Act was not intended to embrace violations of the bad check law even if the checks were received by the Government. Its purpose was to suspend the running of statutes of limitation applicable to offenses involving the defrauding of the Government. As the committee reports state, experience during the first World War showed that many offenses involving fraud on the Government were barred because they had not been discovered within time to prosecute during the three-year period of limitation.[7] It seems altogether clear that the passing of bad checks, which may and almost always would be discovered immediately, does not fall within such purpose.

It is our opinion that the Wartime Suspension of Limitations Act does not apply. So holding, we must hold further that the ordinary three-year period of limitations had expired when the present prosecutions were begun, and hence that the motion to dismiss the informations should have been granted.

Reversed.

7. H.R.Rep. No. 2051 and Sen.Rep. No. 1544, 77th Cong., 2d Sess. (1942) relating to preceding statutes.