Calvin KOVENS and Leon Cohen, Appellants,

v.

UNITED STATES of America, Appellee.

No. 20140.

United States Court of Appeals Fifth Circuit.

Nov. 27, 1964.

Rehearing Denied Feb. 4, 1965.

Chester Bedell, Jacksonville, Fla., Irwin J. Block, W. G. Ward, Miami, Fla., for appellants.

Richard W. Schmude, Atty., Dept. of Justice, Washington, D. C., Edith House, U. S. Atty., Miami, Fla., William A. Paisley, Atty., Dept. of Justice, Washington, D. C., Herbert J. Miller, Jr., Asst. Atty. Gen., Beatrice Rosenberg, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from the conviction, based on a jury verdict of guilty, of the two appellants on four counts each of a ten-count indictment charging violation of, and a conspiracy to violate, Title 18 U.S.C.A. § 1014 providing in substantial

part: "Whoever knowingly makes any false statement * * * for the purpose of influencing in any way the action of * * * a Federal Savings and Loan Association * * * upon * * * advance * * * shall be fined not more than $5000 or imprisoned not more than two years, or both." Appellant Kovens was the President and appellant Cohen the Secretary of one of the corporations involved in the transaction with the Miami Beach Federal Savings and Loan Association.

The first three substantive counts of the indictment charged Kovens with having made specific false statements. In view of the attack made by the appellants on the indictments themselves, it is necessary that the exact language of the indictment be quoted. With the exception of the dates and amounts involved each of the second and third counts are similar to the first, which was as follows:

"That on or about the 8th day of December, 1958, at Miami Beach, Dade County, in the Southern District of Florida, Calvin Kovens, the defendant herein, in the capacity of President of the Cal Kovens Construction Corp., Miami Beach, Florida, did knowingly and willfully make a false statement and report for the purpose of influencing the action of the Miami Beach Federal Savings and Loan Association, Miami Beach, Florida, a Federal Savings and Loan Association, in advancing funds pursuant to a Construction Loan Agreement dated the 5th day of December, 1958, between the said Miami Beach Federal Savings and Loan Association, Ruedd, Inc. and Cal Kovens Construction Corp., all of Miami Beach, Florida, in that the said Calvin Kovens on or about the 8th day of December, 1958, did submit to the said Miami Beach Federal Savings and Loan Association at Miami Beach, Florida, a Construction Draw requesting payment of the sum of $149,946.86 from funds held in escrow by the said Miami Beach Federal Savings and Loan Association for the said Ruedd, Inc. pursuant to the terms of the said Construction Loan Agreement, and certifying that the funds enumerated in the said Construction Draw and itemized on the reverse side thereof had been expended for the sole purpose of constructing the improvement on the property described therein, whereas in truth and in fact, as the said Calvin Kovens then and there well knew, the said Construction Draw was false in that the entire amount of the funds enumerated in the said Construction Draw and itemized on the reverse side thereof was not expended for the sole purpose of constructing the improvement on the property described therein, in violation of Title 18, United States Code, Section 1014."

In general, whereas Count One dealt with the first "Construction Draw" on the building contract, Counts Two and Three dealt with the second and third "Construction Draws" respectively.

Count Four was dismissed by the court before trial. Count Five dealt with an alleged false statement of cash on hand and resulted in a verdict of not guilty by the jury. Counts Six, Seven and Eight alleged Cohen's participation in the same three allegedly false statements dealt with in Counts One, Two and Three.

Count Nine was stricken by the trial court before trial. Count Ten undertook to allege the conspiracy between Kovens and Cohen. It charged that during the period alleged the two defendants

"did knowingly, willfully and unlawfully conspire and agree together and with each other to commit an offense against the United States, to-wit: ¶ To make a false statement and report to influence the action of a Federal Savings and Loan Association upon an application for advance of construction loan funds, and thereby commit an offense against the United States in violation of

Section 1014, Title 18, United States Code."

It further alleged

"that it was a further part of the said conspiracy that the defendants, Calvin Kovens and Leon Cohen, would prepare for submission and submit to the said Association pursuant to the terms of the said agreement Construction Draws which misrepresented the funds disbursed by the said Cal Kovens Construction Corp., and requested the disbursement of Construction Escrow funds to the said Cal Kovens Construction Corp. in excess of the monies actually expended by the said Cal Kovens Construction Corp. in the construction of the said shopping center."

In response to a motion by the appellants for a Bill of Particulars, the trial court entered an order "requiring the United States to state what funds, drawn under the provisions of the construction loan agreement, are claimed to have been diverted or not expended for the sole purpose of constructing the improvements on the property described in the loan agreement. * * *"

The Bill of Particulars filed by the United States, undertook to specify in some detail certain items purportedly included in the total amounts specified as each of the three Construction Draws which the Government charged "had not in fact been expended as alleged." Appellants made no further contention that the itemization of the amounts by which the three Construction Draws were alleged to be false was not sufficient to meet their requirements in preparing for trial.

In order better to understand the facts surrounding the transaction resulting in the indictments, it is necessary only to know that the appellants were President and Secretary respectively of the Cal Kovens Construction Corp. which had a construction contract for the building of a shopping center on land on a leasehold owned by Ruedd, Inc., a corporation of which Kovens was also President; that Kovens, Ruedd and the Association had entered into a "construction loan agreement" which, among other things, provided for current funds to provide for construction costs upon certain conditions. One of these conditions was at the time of any payment made to the owner or contractor "The Contractor or Owner shall submit to the Association waivers of liens from the Contractor and materialmen, and a final survey together with such other evidence as it may desire, showing that all payroll, material bills and any and all other indebtedness occurred in the course of the construction have been paid in full."

The three Draws which the Government claimed contained false statements were in the form of a sworn statement requesting the payment of the stated amount and containing the following language.

"That the funds requested in the sum of 149,946.86 Dollars, enumerated in the draw above and itemized on the reverse side hereof have been expended for the sole purpose of constructing the improvement on the following described property, to-wit: [Here was the description of the property]

"That this affidavit is made for the purpose of inducing the Miami Beach Federal Savings and Loan Association, of Miami Beach, Florida, to make payment of the above draw according to the terms and provisions of the Escrow Agreement made a part of their mortgage loan."

Each of the statements appears to have been signed and sworn to by Kovens. None of the statements contained an itemized list of expenditures "on the reverse side hereof" but each of them had associated with it a statement on the letterhead of Cal Kovens Construction Corp., addressed to Miami Beach Federal Savings and Loan Association, and marked, Re: Ruedd, Inc., and under that, Requisition No. 1, 2 or 3 respectively. This statement then contained an itemized list of what appeared to be subcontracts totalling the full amount of the

general contract of $1,000,250, an item showing "Requis. Previous" which on the first statement was blank, a column showing "Balance before Req." the items of which on the first statement would, of course, equal the total Contract Price of $1,000,250, a column headed "This Requis." the items of which in the first statement totalled $149,946.86 and then a column headed "Balance" which would show the balance due on each subcontract.

It was the thrust of the Government's case, as disclosed by the indictment, followed by the Bill of Particulars, that as to several items on each of the itemized statements submitted with the respective Construction Draws the amount stated had not been paid at all or had not been paid in full or, in any event, had not been paid to the purported payee or subcontractor. The Government's proof with respect to this item consisted in nearly every case of proof that a receipt or purported discharge or waiver of lien executed by the party whose name is shown as a subcontractor did not in fact speak the truth, either because the receipt or waiver of lien stated an amount in excess of payments actually made or no such contract or payment was made at all to the particular indicated payee or subcontractor.

The appellants here make a four-pronged attack on their conviction. They first contend that the Grand Jury that indicted appellants was illegally constituted and that therefore they could not be legally tried or convicted. Their next attack challenges the sufficiency of the indictment itself. The third ground of complaint is that the evidence was insufficient to convict the appellants on the charges made by the indictment. Finally, appellants contend that they did not receive a fair trial because of the inadequacy of the Bill of Particulars and what they charged to be a change in the view of the trial court as to the issues involved as contrasted with another trial judge who had entered the pre-trial order; and on the further ground that they were denied the opportunity to introduce testi-mony which, according to their view of the case, was material to their defense.

Dealing first with the attack on the Grand Jury that indicted appellants, our path is clear. In their brief here, appellants say, "Unquestionably, the issue decided by a panel of this Court in Chance v. United States, 5 Cir., 322 F.2d 201, is the same issue that appellants desire to present in this case. The question is presented in the same way and on the same record, but the decision in Chance v. United States was an incorrect decision and should not be followed." In Chance v. United States this Court held that the Grand Jury had not been illegally constituted. By familiar rules of stare decisis we will not disturb that determination.

We turn next to the contention that the indictment does not charge an offense. This contention is without substance. A reading of the indictment, supra, makes it plain that the appellants are charged with having submitted a Construction Draw requesting payment of the sum of $149,946.86 from funds held in escrow by the Association and certifying that the funds enumerated in the Draw and itemized on the reverse side thereof had been expended for the sole purpose of constructing the improvement, whereas in truth and in fact to the knowledge of the appellant the Draw was false in that the entire amount of the funds enumerated and itemized was not expended for the sole purpose of constructing the improvements. There is nothing said by this Court in Van Liew v. United States, 5 Cir., 321 F.2d 664, that would warrant our holding that the language used in the three counts against Cohen did not adequately meet the requirements of setting forth with clearness and all necessary certainty the alleged crime for which the defendants were being tried.

The argument by appellants that "the alleged false statement set forth in the indictment is * * * intrinsically meaningless and absurd" because it alleges that the certificate certified that certain funds had been expended, where-

as it also alleged that the "fund" referred to was the escrow deposit from which reimbursement was to be made and that "before the funds were drawn and paid from the escrow account, those funds had not been and could not have been expended for that or any other purpose" is purely fanciful. The word "fund" like the word "sum" or the word "amount" need not, when viewed in the context that makes it plain what is intended, refer to the same thing in the sense contended for by the appellant here. There is no confusion that the word "funds," which the indictment says the certificate claimed had been expended by the contractor, referred to a sum of money and not the balance which was on deposit in the escrow account, and which elsewhere in the indictment was spoken of as escrow "fund."

■ Appellants' contention that the evidence was insufficient to convict on the charges made by the indictment is based primarily upon appellants' construction of Judge Dyer's analysis of the indictment as expounded by him in requiring a Bill of Particulars. The language which gives rise to this contention is that Judge Dyer required the United States "to state what funds, drawn under the provisions of the Construction Loan Agreement, are claimed to have been *diverted or not expended* for the sole purpose of constructing the improvements." (Emphasis added) The appellants contend that under this construction of the indictment the burden on the Government required that it prove that at the time the construction was completed some part of the money called for by the several Draws and on the final estimate, had been "diverted" or at least had not been "expended for the sole purpose of constructing the improvements."

On the other hand, the Government contends that the language in Judge Dyer's order must be viewed in light of the allegations in the indictment which makes it plain that the time as of which the Government charged the falsity existed was at the time the Construction Draw was submitted, and the test of whether there had been a diversion or failure to pay the entire amount as itemized was to be tested as of that date. We agree with this construction.

It is plain that the indictment charged that, as to Count One, Kovens on December 8th knowingly caused a false certificate to be filed with the Association for influencing its action in advancing funds in that he submitted a Construction Draw requesting the payment of $149,-946.86 and certifying that funds enumerated in the said Draw and itemized thereon *had been expended* as itemized, whereas, to his knowledge the Draw was false in that the entire amount of the funds enumerated was not expended as itemized. It would make no difference whether the amount was thereafter expended or if the amount was spent for a different purpose than that stated on the certificate, including the itemized list associated with it.

■ On the construction which the trial court and we place on the indictment, there can be no question about the sufficiency of the evidence to warrant a jury's finding that there were false statements contained in the itemized certificate filed on each of the three dates as charged in the three counts of the indictment. The Government had no burden to prove that the sum of $149,-946.86 claimed on the first Draw, was not actually spent by Kovens Construction Company in some other manner. Nor was the Government under any obligation to prove that when all of the Construction Draws had been honored and the building had been completed, there had been a failure to pay out the total amount representing all of the Draws.

The statute deals with the falsity of any statement made for the purpose of influencing the Association as to the making of an advance. We agree that the purpose of Section 1014 is to protect authorized functions of specified institutions from "deceptive practices," United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598, as contended for by the appellants. But where, as here, the

indictment charges that the appellant "for the purpose of influencing the action of the Association," submitted a Construction Draw requesting payment of the sum of $149,946.86, knowing the statements on said Draw to be false, it can hardly be said that there was an absence of an allegation which would support proof of the materiality of the alleged false statement. Thus, it is plain that the indictment alleges conduct that fully meets the standard which appellants distill from the cases of Gonzales v. United States, 10 Cir., 286 F.2d 118, Robles v. United States, 9 Cir., 279 F.2d 401, and Brandow v. United States, 9 Cir., 268 F.2d 559; that is, that it alleges conduct which "must intrinsically tend to influence or be capable of influencing the institution to act favorably upon the application in respect of which the statement is made." This indictment clearly set forth facts from which the intrinsic capacity of the statement to influence favorable action may fairly be deduced.

What we have decided with respect to the counts charging Kovens, applies with equal force as to the counts charging Cohen with Guilt. Cohen's connection with the statements was adequately proved.

■ Turning now to the conspiracy count, we think that a reading of this count as quoted above makes it perfectly plain that a conspiracy to violate the Federal Criminal Statute is adequately charged. No elaboration of this view is required.

Turning next to the contention that the evidence was not sufficient to warrant submission of the case to the jury, we conclude that this contention is made on an incorrect understanding by appellants of the issue before the trial court. That is to say, it is based on a contention by the appellants that the burden on the Government was to prove that the total funds covered by all the Draws were not expended on the construction job. It can hardly be argued seriously that there was not sufficient proof to show that as to the particulars set forth in the Bill

of Particulars specified items certified to "have been expended" had not in fact been expended at the time of the filing of the statement in accordance with the itemization submitted as a part of the Draw. We have no doubt but that there was adequate evidence to warrant the jury's finding that the certificate contained false statements which were in the language of appellant Kovens himself "made for the purpose of inducing the Miami Beach Federal Savings and Loan Association * * * to make payment of the" amounts requested.

■ Finally, with respect to the challenge as to the fairness of the trial, the argument runs that at a pre-trial conference held two days before the trial, the trial court determined that evidence attempting to show that in fact the total amount covered by the escrow arrangement had ultimately gone into the construction project and/or that, at the time the Draws were submitted, an amount equalling the total amount of the Draw had actually been expended on the project woud not be received in evidence, and that the testimony should be restricted to the truth or falsity of the statement and the items accompanying it.

Appellants contend that this ruling by Judge McRae, the trial judge, was in conflict with an earlier order of Judge Dyer in requiring that the Bill of Particulars be filed. We find no such conflict and we concur in Judge McRae's determination as to the issue before the jury. The indictment was not brought on a general charge of fraud in drawing money from a Federal Building and Loan Association for construction work which was not spent for the purpose intended, but is based upon a particular statute that prohibited the making of false statements for the purpose of influencing the conduct of such an association in the expenditure of its funds. There is ample basis for Congress to have a concern about the latter matter as well as for the former. Proof which would be relevant on the issue of general fraud is not necessarily relevant on a determination of whether the statements here involved were in

fact true or false. With this construction of the alleged offense in mind, we conclude that the trial court did not err in rejecting the testimony tendered by the appellants.

We conclude that the appellants had a fair trial upon an indictment that fairly apprised them of the charge against them and that the evidence fully justified the verdict of guilt.

The judgment is affirmed.