**UNITED STATES v. GONZALES.**
Criminal No. 16773.

District Court, D. Massachusetts.
Oct. 6, 1944.

Edmund J. Brandon, U. S. Atty., and Joseph M. Hargedon, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

John B. Nunes, of New Bedford, Mass., for defendant.

HEALEY, District Judge.

The defendant, Gonzales, and others have been indicted for conspiracy to violate Section 35(A) of the Criminal Code, 18 U.S.C.A. § 80.

The defendant, Gonzales, hereinafter referred to as the defendant, has filed the present motion to quash the indictment.

The indictment makes substantially the following allegations:

The Bethlehem-Hingham Shipyard, Inc., hereinafter referred to as the Shipyard, was a corporation engaged at Hingham, Massachusetts, in the manufacture and construction of ships for the United States Navy Department pursuant to two contracts for the building of approximately 102 vessels. The Shipyard, by the terms of the contracts, was to be reimbursed by the United States Government through the Navy Department for the cost incurred in the performance of the contracts, including the cost of labor. The defendant was a welder engaged in the construction of the ships. Daily tally sheets were made out by a "counter" supposedly showing the amount and kind of work performed by each welder. The sheets were signed by the welder, the counter and the welding supervisor, and were thereafter transmitted to the accounting department of the Shipyard. On the basis of the tally sheets, the accounting department of the Shipyard made up weekly payrolls on the basis of which the welders, including the defendant, were paid. The payrolls were periodically submitted to the Navy Department for reimbursement in accordance with the contracts.

The indictment further alleges that, at various times from January 1, 1943, until May 31, 1944, the defendant unlawfully, wilfully, knowingly and feloniously conspired with others, including a counter, to defraud the United States of America by entering an agreement that the counter would enter upon the daily tally sheets "false and fraudulent amounts and kind of welding work which were in excess of and different from the amount and kind of work actually performed by the welders," including the defendant; that the tally sheets would be signed by the particular defendant welder, including the present defendant, by the counter, and by the welding supervisor, and would be forwarded each day to the accounting department of the Shipyard.

The defendants further agreed, according to the allegations, that each of the conspiring welders would pay to the counter, part of the excess payments received by reason of the alleged fraudulent acts.

It is finally alleged that the purpose of the conspiracy was to obtain payment for the fraudulently credited work, the conspirators, including the defendant, knowing that the Shipyard would be reimbursed by the Navy Department.

The defendant, by his motion to quash and his argument on that motion, presses three contentions:

1) The defendant was employed by the Shipyard, a private corporation, and not by the Navy Department or by any branch or agency of the United States Government.

2) No money was paid by the United States Navy Department to the defendant or any of his fellow conspirators.

3) No claim for payment was ever made or presented, or caused to be made or presented, by the defendant or anyone in his behalf, for payment or approval, to any person or officer in the civil, military or naval service of the United States, or any department thereof; nor was any false or fraudulent statement or entry made or caused to be made in any matter within the jurisdiction of any department or agency of the United States.

Section 35(A) of the Criminal Code, as amended, 18 U.S.C.A. § 80, provides, so far as is here material, that "Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, * * * any claim upon or against the government of the United States, or any department or officer thereof, * * * knowing such claim to be false, fictitious, or fraudulent, * * * shall be" guilty of an offense.

In my opinion, this case is governed by the principles stated in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443.

That case involved a qui tam or informer action. However, as is clearly indicated in the opinion of the Court, 317 U.S. at page 542, 63 S.Ct. at page 383, 87 L.Ed. 443, the governing principles are equally applicable to criminal proceedings.

In that case, the defendants, electrical contractors, were employed on P.W.A. projects. Their contracts were made with local governmental units rather than with the United States government; but a substantial portion of their pay came from the United States. The plaintiff, an informer, brought action in the name of the United States and on his own behalf under the provisions of 31 U.S.C.A. §§ 231–234, charging the defendants with defrauding the United States Government by collusive bidding on the projects, resulting in the presentation of false claims to the United States Government.

In the District Court, there was a verdict for the plaintiff, and judgment was entered on the verdict. The Circuit Court of Appeals reversed, and the Supreme Court granted Certiorari.

In reversing the decision of the Circuit Court of Appeals, the Supreme Court held that in order to violate the provisions of the statute, 31 U.S.C.A. §§ 231–234, it was not necessary that there be a contractual relationship between the defendants and the Government. That this is true also of criminal proceedings under Section 35(A) of the Criminal Code, 18 U.S.C.A. § 80, is clear from the language of the Court on page 542 of 317 U.S., on page 383 of 63 S.Ct., 87 L.Ed. 443. The majority of the Court, speaking through Mr. Justice Black, there said:

"* * * we cannot say that the same substantive language has one meaning if criminal prosecutions are brought by public officials and quite a different meaning where the same language is invoked by an informer."

■ Thus, the fact that there was, in the instant case, no allegation of direct contractual relationship between the United States and the defendant is immaterial.

The alleged conduct of the defendant in the present case comes as clearly "within the prohibition of the statute," as did the conduct of the defendants in the Hess case.

■ The defendant in the instant case is alleged to have conspired to cause to be presented to the Navy Department the United States false claims. The defendant and his fellow conspirators, according to the allegations of the indictment, conspired to set in motion the machinery which would eventually result in the presentation of false claims to the Navy Department.

The Court in the Hess case, 317 U.S. at page 543, 63 S.Ct. at page 384, 87 L.Ed. 443 said:

"The government's money would never have been placed in the joint fund for payment to respondents had its agents known the bids were collusive. By their conduct, the respondents thus caused the government to pay claims of the local sponsors in order that they might in turn pay respondents under contracts found to have been executed as the result of the fraudulent bidding. This fraud did not spend itself with the execution of the contract. Its taint entered into every swollen estimate which was the basic cause for payment of every dollar paid by the P.W.A. into the joint fund for the benefit of respondents. The initial fraudulent action and every step thereafter taken, pressed ever to the ultimate goal—payment of government money to persons who had caused it to be defrauded."

In the instant case, the alleged conspiracy and all of its integrated acts "pressed ever to the ultimate goal—payment of government money to persons who had caused it to be defrauded."

In the Hess case, 317 U.S. on pages 542, 543, 63 S.Ct. on page 383, 87 L.Ed. 443, it was pointed out that a "large portion of the money paid" the defendants was federal in origin. In the instant case, all of the money paid·for labor was federal in origin.

The Government has strongly urged that this case is governed by my holding in United States v. Ganz, D.C., 48 F.Supp. 323. In other words, the Government contends that false statements and entries are alleged to have been made in matters "within the jurisdiction of" a department of the United States, within the meaning of the latter part of Section 35(A) of the Criminal Code.

This case, unlike the Ganz case, is governed by the principles enunciated in United States ex rel. Marcus v. Hess. It is, therefore, unnecessary to decide whether the principle of the Ganz case is applicable to the present case.

■ The defendant has contended that the indictment must fail for want of sufficient allegations that the defendant knew that the Navy Department would reimburse the Shipyard. It is unnecessary to decide whether, under the peculiar wording of the first part of Section 35(A), knowledge that the funds from which the defendant would be paid were federal in origin is a necessary element of the crime alleged, because, in my opinion, the indictment sufficiently alleges knowledge on the part of the conspirators that the Shipyard would be reimbursed by the Navy Department with federal funds.

The defendant's motion to quash is denied.