UNITED STATES of America
v.
Rafael Alexander DAVEY, Defendant.

Cr. 153–201.

United States District Court
S. D. New York.

Aug. 5, 1957.

Paul W. Williams, U. S. Atty. for
Southern Dist. of N. Y., New York City,
for the United States. John T. Moran,

Asst. U. S. Atty. for Southern Dist. of N. Y., New York City, of counsel.

Haskell R. Barst, New York City, for defendant.

BOOTLE, District Judge (sitting by designation).

After proper waiver of jury trial the defendant was tried by this Court without a jury on a two count indictment, the first of which charges him with failing and neglecting to register as required by Section 3 of Universal Military Training and Service Act, Title 50 U.S.C.A.Appendix, § 453, and the second of which charges a violation of Title 18 U.S.C.A. § 1001, in that

"the defendant, in a matter within the jurisdiction of a department and agency of the United States, to wit, the Department of Justice, Federal Bureau of Investigation, unlawfully, wilfully and knowingly did make and cause to be made, false, fictitious and fraudulent statements and respresentations, to wit, (a) that Enos Jennings Bromwell was unknown to him; and (b) that he had never used the name Enos Jennings Bromwell; whereas, in truth and in fact as the defendant then and there well knew, Enos Jennings Bromwell was a person known to him and that he had used the name Enos Jennings Bromwell on or about the 19th day of April, 1951, when he registered with Local Board No. 12, Selective Service System, New York City."

At the conclusion of the evidence counsel for the defendant moved for dismissal of the indictment as to both counts. Briefs were invited and submitted and decision reserved until this date.

Meanwhile, the Government has joined in the motion to dismiss Count 1 because of the following concatenation of statutes and proclamations. Presidential Proclamation No. 2799, issued July 20th, 1948, 50 U.S.C.A.Appendix, § 453 note, imposed a duty upon aliens born in 1922, after August 30th, 1922, to register on August 30th, 1948. The defendant came within that age group, having been born December 12, 1922. But the statute in force at the issuance of said Proclamation required registration of those persons "residing" in the United States. Act of June 24th, 1948, Title 1, Section 3, 62 Stat. 605. Under the holding of McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173, the defendant probably cannot be said to have been residing in the United States. Accordingly, he was under no duty to register under Proclamation No. 2799.

On June 19th, 1951, the statute was amended to its present form imposing a duty to register upon "every other male person now or hereafter in the United States." (65 Stat. 75, Title 50 U.S.C.A.Appendix, § 453). Thereafter, the President issued Proclamation No. 2942 on August 30th, 1951, 50 U.S.C.A.Appendix, § 453 note. This Proclamation imposed the duty of registration upon those aliens who were born on or after September 15, 1925. Since the defendant was born on December 12, 1922, he was under no duty to register under the latter Proclamation, and the duty to register under the original Proclamation would appear to be doubtful in view of the statutory language and the lack of a precise definition of the term "residing" in the administrative regulations.

The motion of the Government to dismiss the indictment as to Count 1 is granted.

The defendant's motion to dismiss Count 2 is upon the ground that Title 18 U.S.C.A. § 1001 is not applicable, that the alleged false statements do not constitute a crime thereunder and that said Section applies only to those cases where false statements are made to branches of the Government which have the power to decide and act upon a particular subject matter.

This identical question has been decided adversely to the Government in two carefully considered cases which are, on their facts, indistinguishable from this case. In United States v. Levin,

U.S.D.C.Colo.1953, 133 F.Supp. 88, 90, the defendant was indicted in Count 1 for a violation of the National Stolen Property Act, 18 U.S.C.A. § 2314 and in Count 2 for making a false statement to a Federal Bureau of Investigation agent who was investigating the crime charged in Count 1. The Court, holding Section 1001 inapplicable, reasoned that to hold otherwise would mean that the age-old concept of the crime of perjury would be gone; that any person failing to tell the truth to the myriad of Government investigators about any trivial matter, civil or criminal, within the jurisdiction of a department or agency of the Government would be guilty of a crime with greater severity than that of perjury (Section 1001 authorizes 5 years plus $10,000, whereas the perjury statute, 18 U.S.C.A. § 1621, authorizes 5 years plus $2,000); that Congress could not have intended this portion of this statute to have such broad application; that a literal construction of a statute should not be indulged when it would produce absurd consequences, or flagrant injustices, or results not intended by Congress, and concluded that "[W]hen the charge involves statements made when not under oath a reasonable and sensible construction of the statute would be to limit its application to persons under legal obligation to speak or to give information to representatives of an agency or department of the United States who have authority to finally dispose of the matter being investigated, and to cases where the keeping of records or the filing of documents are required or permitted by law. In other cases the perjury statutes are adequate."

United States v. Stark, U.S.D.C.Md. 1955, 131 F.Supp. 190, 199, holds that negative answers, even if given under oath, by contractors to questions asked by agents of the Federal Bureau of Investigation who were investigating reports of an alleged bribery attempt as to whether the contractors knew of money given to officials of the Federal Housing Administration were not "statements" within the statute and that the matter was not one "within the jurisdiction" of the agency. We are indebted to the Stark case for a detailed review of the statutory evolution of what is now Section 1001 from its origin "almost 100 years ago in the wake of a spate of frauds upon the Government", through the 1934 amendment, 48 Stat. 996, the last amendment, except for housekeeping changes affected by the 1948 revision, and also for a careful analysis of seemingly contrary decisions relied upon by the Government, including three unreported cases.

■ In this case the defendant was interviewed informally by agents of the Federal Bureau of Investigation. He was not under oath. The agents asked him whether he knew Enos Jennings Bromwell. He either said "no", or made some other equivalent denial. He was then asked if he were the person who used the name Enos Jennings Bromwell in registering. Again, he either said "no" or made some equivalent denial. It is consistent with the Government's evidence that he simply said "no" to each inquiry. If he said more than that, inasmuch as the conversation was oral and the agents have not preserved their notes, it now would be impossible to reconstruct exactly what verbiage he employed. Whether or not a simple "no" is a statement from the standpoint of grammar and syntax, I do not construe it to be a statement within the contemplation of Section 1001.

■ Nor was this inquiry a matter within the jurisdiction of the Federal Bureau of Investigation within the meaning of the statute. "Jurisdiction means the right to say and the power to act * * *." Carroll Vocational Institute v. United States, 5 Cir., 1954, 211 F.2d 539, 540. The authority and function of the Federal Bureau of Investigation in this case were purely investigative. Under the Selective Service System regulations it is the duty of the Selective Service personnel to report delinquents to the United States Attorney and then "it is the responsibility of the United States Attorney to determine, subject

to the supervision and determination of the Attorney General, whether the delinquent shall be prosecuted." 32 C.F. R. 1642.41, 1642.42(a).

"That Section 80 was not intended to have the meaning here claimed for it is made even clearer when its nature, genesis and history are considered and it is found to be an act dealing generally with the protection of the government against fraudulent claims, bills, and demands. None of its provisions purport to or do have to do with exploratory searches as here made for the purpose of determining whether an agency has jurisdiction. All of them have to do with actual dealings with government agencies whose jurisdiction in respect to the matters dealt with is not in question but is recognized and clear."

United States v. Moore, 5 Cir., 1950, 185 F.2d 92, 95.

The Government relies upon certain statements in the opinion of the Supreme Court in the case of United States v. Gilliland, 1941, 312 U.S. 86, 61 S.Ct. 518, 522, 85 L.Ed. 598, in which case the Court, after pointing out that the Act of June 18th, 1934, amended the section by eliminating the words "cheating and swindling" thus removing its restrictions to cases involving pecuniary or property loss to the Government and making it embrace the making of any false or fraudulent statements or representations "in any matter within the jurisdiction of any department or agency of the United States," says that the Congressional intent was "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." This amendment was sought by the Secretary of the Interior to aid in the enforcement of the laws relating to the Department of Interior and particularly to the enforcement of regulations under the National Industrial Recovery Act of 1933, 48 Stat. 195 with respect to the transportation of so-called "hot oil".

The Court held that the making and using of verified reports which falsely and fraudulently stated the amount of petroleum produced from certain oil wells was covered by the Act. It is easy to see that such machinations would, while not necessarily working any pecuniary or property loss on the Government, result in perversion in one of the authorized functions of the Department of the Interior; namely, prohibiting the interstate transportation of hot oil or contraband oil.

██ But can it be said that when an accused person, a potential defendant, a suspect, grants an agent of the Federal Bureau of Investigation an interview and, in reply to an incriminating question, knowingly makes a negative answer, when truth and morality, but not the law, requires an affirmative reply, such answer perverts the authorized function of the Bureau? Is the authorized function of the Bureau to extract from the suspect only the truth, or, in view of the Fifth Amendment proscribing compulsory self-incrimination, to hear and record only such statement as the accused desires freely and voluntarily to make? Pretermitting whatever question, if any, is involved on this score, but feeling that the Federal Bureau of Investigation would be the first to claim only the latter function, I fail to see that the giving, receiving and recording of such a false statement perverts the true function of the Federal Bureau of Investigation. The authorized function of this agency, a branch or special department or agency of the Department of Justice, and one of the most important branches of the Government, is to investigate and detect crimes against the United States, except where such duties have been specially committed to other departments. United States v. Stark, supra. Of course, it is eternally to be hoped that all such statements will be true, but if they are not true their falsity is not attributable to the Federal Bureau of Investigation and the Bureau in hearing and recording such a statement will not have made a

waterhaul. The false statement by virtue of its falsity is apt to rise up and condemn its maker.

 As is wisely noted in the Stark case, there may be other situations where statements made to the Federal Bureau of Investigation may be within the prohibition of Section 1001, but under the particular facts of this case the statute should not be so broadly construed.

> "Under the familiar canons of construction a penal act of the harshness and rigor of this one,—a harshness and rigor so great that, as the revisers point out in the notes to the Code as amended in 1948, the punishment was deliberately reduced from ten to five years—the statute will not be stretched beyond, it will be strictly confined within, the fair meaning of its terms."

United States v. Moore, supra, 185 F.2d at page 95.

Accordingly the defendant's motion to dismiss the second count of the indictment is hereby sustained.