**UNITED STATES of America,**

v.

**Claudius Charles PHILIPPE, Defendant.**

United States District Court
S. D. New York.
May 19, 1959.

Arthur H. Christy, U. S. Atty., New York City, for the Government, Daniel F. McMahon, Bronxville, N. Y., Samuel Sheres, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Carrison, New York City, for defendant, Simon H. Rifkind, Edward N. Costikyan, John G. Simon, New York City, of counsel.

THOMAS F. MURPHY, District Judge.

Defendant was indicted in four counts for attempted income tax evasion for the years 1953–1956, and in a fifth count for making a false statement in a matter within the jurisdiction of the Treasury Department in violation of Title 18 U.S.C.A. § 1001. Defendant makes three motions seeking respectively, a bill of particulars, discovery and inspection and dismissal of count five.

*The Motion To Dismiss.*

Count five alleges in effect that defendant denied receiving cash currency and kickbacks during certain years from suppliers of services to the Hotel Waldorf-Astoria, and that such denial was false. Upon the oral argument the government attorney conceded that the alleged false statement referred to in Count five was made during the course of an interrogation of defendant under oath, conducted by a Special Agent of the Intelligence Division, Internal Revenue Service, on September 12, 1955. Such interrogation was in the course of an investigation by the Special Agent of suspected criminal tax evasion by defendant. (Queries seeking to elicit these additional facts were set out in defendant's demand for a bill of particulars and the government's concession should be considered an affirmative answer to those queries).

At the threshold we dispose of the government's assertion that we may not consider such admissions on this motion because of the rule that a bill of particulars, or in this case admissions, may not be incorporated with an indictment in ruling upon its sufficiency. Under appropriate circumstances which we deem to exist here such a rule "serves no useful

**584**

purpose" but on the contrary "impedes and delays the administration of justice." United States v. McKay, D.C.E.D.Mich. 1942, 45 F.Supp. 1001, 1004.

■ Proceeding then to the merits, the issue which we have for determination is, whether a false oral denial by defendant of a suspected source of income made to a Special Agent of the Internal Revenue Service investigating and interrogating defendant for possible criminal income tax evasion constitutes a false statement within the purview of 18 U.S.C.A. § 1001? We think not.

■ By the enactment of this statute, the Supreme Court has stated, Congress intended "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." United States v. Gilliland, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L. Ed. 598. The "statements" attributed to defendant herein we are convinced are hardly calculated to, and cannot possibly pervert the authorized functions of a Special Agent of the Intelligence Division, Internal Revenue Service or for that matter the service or the department. The queries of the Special Agent in this case were designed to elicit answers from defendant which would have, if truthful, (we must assume for the purpose of this motion) constituted a confession or admission of vital links in the chain of evidence necessary to a successful prosecution of defendant for tax evasion. While the Special Agent may have been disappointed that defendant would not truthfully answer himself into a felony conviction, we fail to see that his investigative function was in any way perverted. The only possible effect of exculpatory denials however false, received from a suspect such as defendant is to stimulate the agent to carry out his function. It would be strange to expect that the agent would accept defendant's denials and conclude that his investigation should be closed. Unless it were a confession or admission, any statement of defendant could lead only to further investigation to uncover the facts, and that

is the very function of the Special Agent. (See Murphy, The Investigative Procedure for Criminal Tax Evasion, 27 Fordham L.R. 48, 56–59 (1958)). Manifestly, therefore, refusal of a suspect to affirmatively assist a criminal investigator in preparing a case for criminal prosecution against himself has no tendency to pervert the investigator's function. (A valid distinction is readily apparent where the suspect proffers, e. g., false net worth statements, affidavits, or question and answer statements revealing facts peculiarly within the knowledge of the suspect, not otherwise obtainable by the investigator and upon which the latter is requested to rely).

There is persuasive authority supporting the conclusion we here reach. United States v. Davey, D.C.S.D.N.Y.1957, 155 F.Supp. 175; United States v. Levin, D. C.D.Colo.1953, 133 F.Supp. 88; United States v. Stark, D.C.Md.1955, 131 F. Supp. 190. See also United States v. Aronson, 8 U.S.C.M.A. 525 (1957); United States v. Geib, 9 U.S.C.M.A. 392 (1958); United States v. Thomas, 10 U. S.C.M.A. 54 (1958) involving a closely analogous statute construed by those courts as equivalent to 18 U.S.C.A. § 1001 and given effect consistent with our present holding. For a detailed analysis of the statute with which we are concerned and its legislative history see United States v. Bramblett, 348 U.S. 503, 75 S. Ct. 504, 99 L.Ed. 594 and United States v. Stark, supra.

The cases relied on by the government in opposition to the motion to dismiss are distinguishable. Knowles v. United States, 10 Cir., 1955, 224 F.2d 168, and Cohen v. United States, 9 Cir., 1953, 201 F.2d 386 certiorari denied 345 U.S. 951, 73 S.Ct. 864, 97 L.Ed. 1374, both involved false written net worth statements submitted by the defendants to Internal Revenue Agents investigating into the possible tax liability of each defendant. The perverting potential of such false net worth statements is obvious, in that the detailed facts and figures they set forth furnish the foundation for further inquiry and computation, and if false, lead

the government down wrong paths and blind alleys. Those cases are further distinguishable from the instant one in that they involve affirmative representations of the defendant's net worth during particular years, while this case involves a negative exculpatory denial of a suspected source of income.

It should be pointed out, too, that in the Knowles case Judge Pickett was a member of the panel of the court and it was he who as a Circuit Judge wrote the opinion in the district court in United States v. Levin and came to an opposite conclusion when dealing with a false oral denial to an F.B.I. agent.

Neither party has referred us to Smith v. United States, 1958, 257 F.2d 133 another and later opinion by the Tenth Circuit, but in our opinion and with respectful deference we think wrongly decided. On the facts it is indistinguishable from the present case. In fairness, however, we must state that the point was not raised for we have sent for and examined the briefs and, parenthetically, Judge Pickett was not a member of the panel.

In United States v. Silver, 2 Cir., 1956, 235 F.2d 375, 376, certiorari denied 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80, our circuit was presented with a situation involving possible perversion of governmental functions. There was involved therein an investigation into the integrity of an employee of the Bureau of Internal Revenue, brought about by an informer's accusation of bribery attributable to such employee. There was therefore the administrative functioning of the agency directly in issue. In addition the appellant did not raise the present issue. The most he said was, as Chief Judge Clark reports, "That the indictment is legally insufficient *because it did not allege the false statements were material.*" (Emphasis supplied.)

The remaining cases relied upon by the government dealt with similar situations where the possibility of perversion genuinely existed or else the case contained only dicta on the issue at bar though not there involved. Accordingly,

the motion to dismiss Count Five is granted.

*Discovery and Inspection.*

The government has consented to Item (b) and the only remaining item therein sought, viz., (a), relates to Count Five of the indictment which, in view of our disposition of the motion to dismiss, is now moot.

*Bill of Particulars.*

The government has consented to Items (1) and (2). Items (3) and (4) are granted. Items (6) to (10) inclusive are moot. The following discussion relates to Item (5), which is denied.

The government has stated that this is not a "net worth" case; that it will prove the defendant omitted specific items of taxable income from his tax returns.

Defendant alleges that he manages a multi-million dollar business and in connection with the management of varied operations, the departments headed by him maintained as part of their business operation, a cash fund derived from various sources which was in defendant's custody. This fund was expended for a variety of business purposes. Defendant has already given to the government a 79 page detailed accounting of business disbursements made by him from the business fund referred to above. This accounting is represented to be a disclosure of his defenses, and what defendant seeks by Item (5) he says is a disclosure of the claims which the government makes relating to his defenses. Though inferentially recognized as unusual, defendant justifies such disclosure because of the unusual circumstances here present, viz., the extraordinary volume of business activities in which he engaged.

A demand for particulars is valid where necessary to the preparation of the defense and to avoid surprise at the trial. Particulars should also be granted "to save a defendant wholly needless labor in preparing his defense." United States v. Dolan, D.C.D.Conn., 1953, 113 F.Supp. 757, 759. For reasonable assistance as well as to prevent un-

fair surprise it is a "wise exercise of discretion in tax cases such as this to grant a motion requiring the government to identify every basic entry on a return-the falsity of which it will seek to prove on trial * * *. By the same token * * * generally in such cases, (if defendant so requests) the government should be required to state if it will offer proof of fraud based upon the omissions from the tax return of data which the defendant was legally bound to report and, if so, to identify the omissions with sufficient specificity to enable the defendant to have in readiness on trial any evidence relevant to the claimed omissions." United States v. Dolan, supra. It is unwise except in exceptional circumstances to require the government to particularize the amount in dollars of any claimed omission or understatement made in the return.

Requiring the government to specifically identify omitted or unreported items of income is one thing, but there is no necessarily logical relation between such unreported income and the detailed manner in which defendant allegedly distributed a fund of money in his care. The effect of requiring the government to indicate in what respect it accepts or rejects defendant's accounting of the receipts and disbursements of that fund might be to unduly limit the government in its proof or disclose its evidence. The government alleges "kickbacks." It may be that the money defendant is charged with receiving as income and failing to report was over and above that accounted for as part of this fund mentioned.

█ Income defendant is alleged to have received and fraudulently failed to report is the gravamen of the crime charged. Defendant is entitled to particulars of that to enable him to prepare his defense and avoid surprise. He is not entitled to particulars relating to his expenditures or the management or mismanagement of a fund in his custody. He is not charged with mismanagement of corporate funds, and it is irrelevant that defendant has voluntarily submitted the accounting in question. That may be relevant to his defense but in nowise appears calculated to particularize the crime charged.

It may be that the government will attempt to establish the falsity of entries in the accounting of the fund aforementioned, but assuming that to be true, though there is no way of knowing at this juncture what evidence the government will adduce to prove the crime, it would be showing a method employed by defendant to conceal items of income and, while it is fair to assume he would know as well as any which items are false, he would be in no position to complain because his own devious methods make his defense more burdensome. United States v. Klein, D.C.S.D.N.Y.1954, 124 F.Supp. 476.

Item (5) is cast in misleading terms, but when properly read in conjunction with Item (3) to which it refers, would read: State the amount of additional unreported income which the government concedes defendant was properly entitled to exclude or deduct from his gross income or gross receipts. Item (5) then refers to defendant's accounting of receipts from banquet patrons and caterers to which, he argues, the government should refer in specifying the concededly allowable exclusions or deductions of defendant.

The inherent error in this proposition is that Item (3) is predicated on the theory that the additional items of income are personal receipts chargeable to defendant as income and therefore reportable as such; Item (5) is bottomed on the fact that the accounting deals with receipts of a department of the Hotel Waldorf-Astoria in the custody of defendant and not constituting taxable income to him and therefore not includable in his gross income.

Let the government permit the discovery and inspection herein ordered and serve the bill of particulars ordered within ten days from the date of publication of this opinion in the Law Journal.

This is an order. No settlement is necessary.