**UNITED STATES of America, Appellee,**

v.

**M. Raymond ADLER, Appellant.**
**No. 466, Docket 31048.**

United States Court of Appeals
Second Circuit.

Argued May 18, 1967.

Decided July 27, 1967.

Daniel H. Greenberg, New York City, for appellant.

Jack Kaplan, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, and Douglas S. Liebhafsky, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, MOORE, Circuit Judge, and BONSAL, District Judge. *

BONSAL, District Judge:

Appellant, M. Raymond Adler, having waived a jury, was convicted in the Southern District of New York on a one-count indictment charging a violation of Title 18, § 1001 of the United States Code, which provides:

§ 1001. Statements or entries generally

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The indictment charges that "On or about the 26th day of July, 1963, * * * " the appellant "in a matter within the jurisdiction of a department and agency of the United States, to wit, the Federal Bureau of Investigation, United States Department of Justice (F.B.I.), unlawfully, wilfully and knowingly did make false, fictitious and fraudulent statements and representations, namely, that while he was engaged in the performance of a construction contract for the United States, public officials corruptly exacted money and other things of value from him in return for being influenced in their performance of official acts in connection with the said contract, whereas in truth and in fact, as the defendant then and there well knew, no money or other thing of value had been so exacted by any public official."

In July of 1963 the appellant was president of a construction company having as its only Government contract a $3,165,000 contract awarded by the United States Navy in September of 1962 for the construction of houses at the submarine base in Groton and at the underwater sound laboratory in New London, Connecticut.

On July 26, 1963, appellant, on his own initiative, went to the New York office of the F.B.I. where Special Agent Weinberg was assigned to speak to him. Appellant told Agent Weinberg that a "friend" of his had been required to pay bribes to Government officials in the course of completing a construction contract at a Government installation and that he hoped that the F.B.I. "would do nothing more than reprimand the Government officials involved so that this bribery would stop." At this point, Agent Weinberg asked appellant if he was not really talking about himself, and appellant said that he was. Agent Weinberg promptly advised appellant of his constitutional rights, viz., that he need say nothing further, that anything he did say could be used against him, and that he had a right to consult an attorney. Appellant said that he did not wish to make any further statement at the time and that if anyone else asked him about the bribery he would deny it. He indicated that he would be in his New York office the following Monday morning. The following Monday Agent Weinberg went to appellant's office and again advised him of his constitutional rights. Appellant told him at that time that because the contract was in an early stage it would be unfair to him and his company to say anything further about the bribery, that it could not be proved without his cooperation, and that if any other agents or a grand jury questioned him he would deny it.

---

* Of the Southern District of New York, sitting by designation.

The F.B.I. initiated an investigation to determine whether any Government employee engaged in the administration of appellant's Navy contract had in fact solicited or received any bribes. As a part of the investigation, appellant was called before a grand jury, but on the advice of his attorney, refused to answer any questions.

On February 25, 1965, while the investigation was still in progress, Special Agents Stonko and Hendry of the F.B.I. visited appellant's Connecticut office, by appointment, to examine the corporate books and records for evidence of the payment of bribes. Appellant was at the office and the agents identified themselves to him and told him the purpose of their visit. Appellant produced certain corporate records, and before the agents began to examine them, appellant "started talking about his contract with the Navy, his problems that he was having." Agent Stonko interrupted appellant and advised him of his constitutional rights. Appellant went on to say that the bribery accusation he had made in 1963 was false, that he had made the accusation to "get even" with the Government personnel handling his contract because they had been giving him a "rough time," and that he had hoped that an investigation by the F.B.I. might keep the officials "off his back."

At the trial, 80 to 90% of the Government employees involved in the administration of appellant's contract testified that they had never solicited a bribe from appellant, that he had never offered them a bribe, and that appellant had never complained to them that any Government official had solicited a bribe from him. Appellant did not testify. At the conclusion of the trial, appellant having waived a jury, Judge McLean found the appellant guilty. In a statement for the record, Judge McLean discussed the elements of the crime charged and found that the Government had proven beyond a reasonable doubt: (1) that on July 26, 1963 the appellant made the statement to the F.B.I. charged in the indictment; (2) that the statement was false and that ap-

pellant knew it was false; (3) that the statement was made knowingly and wilfully. Judge McLean also found, (4) that since the appellant took the initiative and went to the F.B.I. and made a knowingly false statement to them, the statement was made in a matter within the jurisdiction of the F.B.I. as "jurisdiction" is used in § 1001.

■■ We believe that Judge McLean properly defined the elements of the crime. See, United States v. McCue, 301 F.2d 452 (2d Cir. 1962), cert. denied, 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962). The evidence with respect to the first three elements viewed in the light most favorable to the Government, United States v. Aadal, 368 F.2d 962 (2d Cir. 1966), cert. denied, 386 U.S. 970, 87 S.Ct. 1161, 18 L.Ed.2d 130 (1967); United States v. Castellana, 349 F.2d 264 (2d Cir. 1965), cert. denied, 383 U.S. 928, 86 S.Ct. 935, 15 L.Ed.2d 847 (1966); United States v. Brown, 236 F.2d 403 (2d Cir. 1956), overwhelmingly supports Judge McLean's findings. We also agree that the statement made by the appellant to the F.B.I. was made in a matter within the jurisdiction of the F.B.I.

Appellant contends (1) that his admission to Agent Stonko of the falsity of his statement to Agent Weinberg was received in violation of his constitutional rights, and (2) that the F.B.I. is not an agency to which § 1001 is applicable and, therefore, the giving of false information to the F.B.I. is not "any matter within the jurisdiction of any department or agency" of the Government.

■ As to the first contention, when Agent Stonko went to appellant's Connecticut office in February, 1965, he was aware that appellant had refused, on the advice of counsel, to testify before a grand jury in December, 1963. However, the purpose of Agent Stonko's visit was to examine the corporate books and records, and when appellant voluntarily began to discuss his problems with the Navy contract, Stonko immediately informed him of his constitutional rights. Appellant was not in custody, there was

no criminal charge pending against him, and Stonko's presence in his office was not surreptitious. (Compare Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).) Appellant's rights were not violated because prior to visiting appellant's Connecticut office Agent Stonko did not seek permission from counsel who had represented appellant on one occasion over a year before. See, Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Fiorillo, 376 F.2d 180 (2d Cir. 1967); United States v. Bottone, 365 F.2d 389 (2d Cir. 1966), cert. denied, 385 U.S. 974, 87 S.Ct. 514, 17 L.Ed.2d 437 (1966); United States ex rel. Daskal v. Nena, 361 F.2d 178 (2d. Cir. 1966), cert. denied 385 U.S. 874, 87 S.Ct. 150, 17 L.Ed.2d 102 (1966).

As to appellant's second contention, appellant relies on Friedman v. United States, 374 F.2d 363 (8th Cir. 1967). Friedman had been convicted under § 1001 for falsely stating to the F.B.I. (for the purpose of initiating a federal investigation and prosecution of the patrolman under the Civil Rights Laws) that he had been assaulted by a Missouri State Highway Patrolman.[1] In reversing the conviction, the majority concluded that "jurisdiction" of any department or agency as used in § 1001 "means the right to say and the power to act," and must be distinguished from "the mere authority to conduct an investigation in a given area without the power to dispose of the problems or compel action." 374 F.2d 367. Applying this test, the Eighth Circuit held that a false statement to the F.B.I. to initiate a criminal investigation was not a matter over which the F.B.I. had "jurisdiction" under the statute.

The majority discussed the history of the statute and concluded that Congress was primarily concerned with curtailing "the flow of false information to the newly created regulative agencies" (created under the "New Deal"), and that the courts had been reluctant "to interpret § 1001 to cover the investigation of criminal conduct." If "jurisdiction" as used in the statute was not interpreted in this technical sense, the majority was fearful that, "anything more than a casual social conversation with a Government employee would, without warning, subject the speaker to the possibility of severe criminal punishment," which could theoretically exceed the punishment for perjury. These possibilities, to the mind of the majority, might cause citizens to hesitate before giving information to police authorities, thereby frustrating the "important social policy that is served by an open line of communication between the general public and law enforcement agencies."

In the first case to reach the Supreme Court after § 1001 was amended into substantially its present form, the court stated that:

> The [1934] amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction. [United States v. Gilliland, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941).]

Similarly, the Supreme Court in United States v. Bramblett, 348 U.S. 503, 507, 75 S.Ct. 504, 507, 99 L.Ed. 594 (1955), found "no indication in either the committee reports or in the congressional

---

1. While the jury found that Friedman's statement to the F. B. I. that he had been "struck, beaten, assaulted, and severely injured and wounded" was knowingly and wilfully false, the majority opinion remarks:

> It is noteworthy, however, that after Friedman had been taken into custody by state officials, Lt. Maxey admitted that he had scuffled with Friedman while he was in custody on two occasions, each lasting about one and one-half minutes, and that Friedman admittedly had some small, observable injuries. Nonetheless, the instant prosecution was instituted in the United States District Court for the Eastern District of Missouri, [374 F.2d 365.]

debates that the scope of the statute was to be in any way restricted", and this court in United States v. McCue, supra, 301 F.2d at 455, rejected "any theory of narrow applicability."

Moreover, the *Friedman* majority's restrictive interpretation of the word "jurisdiction" as used in § 1001 cannot be reconciled with the broad interpretation applied to other terms in the statute. The word "statement" has been construed to include statements not required to be made by law, not under oath, and not in writing. Neely v. United States, 300 F.2d 67, 93 A.L.R.2d 718 (9th Cir. 1962), cert. denied, 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962); Cohen v. United States, 201 F.2d 386 (9th Cir. 1953), cert. denied, 345 U.S. 951, 73 S.Ct. 864, 97 L.Ed. 1374 (1953); Marzani v. United States, 83 U.S.App. D.C. 78, 168 F.2d 133 (1948), aff'd by an equally divided court, 335 U.S. 895, 69 S. Ct. 299, 93 L.Ed. 431 (1948). The word "agency" as used in § 1001 has been broadly interpreted by the courts to include the Disbursing Office of the House of Representatives, United States v. Bramblett, supra, and Army Post Exchanges, Brethauer v. United States, 333 F.2d 302 (8th Cir. 1964).

In only the so-called "exculpatory no" cases have the courts shown a reluctance to extend § 1001 "to cover the investigation of criminal conduct," Paternostro v. United States, 311 F.2d 298 (5th Cir. 1962); United States v. Philippe, 173 F. Supp. 582 (S.D.N.Y.1959); United States v. Davey, 155 F.Supp. 175 (S.D. N.Y.1957); United States v. Stark, 131 F.Supp. 190 (D.Md.1955); United States v. Levin, 133 F.Supp. 88 (D.Colo.1953). As stated in Stark, supra, 131 F.Supp. at 207:

> The 5th Amendment provides that no person shall be compelled to be a witness against himself in criminal cases. While not strictly applicable here the construction of section 1001 here sought by the government seems inconsistent with this great bulwark of individual liberty.

However, even this exception to the application of § 1001 was rejected by the Ninth Circuit, Brandow v. United States, 268 F.2d 559 (9th Cir. 1959), and has not been adopted in this circuit. See, United States v. McCue, supra. See also, United States v. Van Valkenburg, 157 F.Supp. 599, 17 Alaska 450 (D.Alaska 1958). In any event, the "exculpatory no" cases are readily distinguishable from this case where appellant made an affirmative, voluntary statement deliberately intended to provoke agency action. See, Paternostro, supra; Philippe, supra; Stark, supra.

Consistent, therefore, with the view that § 1001 was broadly drawn to protect the "authorized functions" of federal agencies from "perversion," the word "jurisdiction" as used in the statute must mean simply the power to act upon information when it is received. The making of intentionally false statements to the F.B.I. calculated to provoke an investigation by that agency may cause more "perversion" of authorized agency functions—and more harm to individuals—than false pecuniary and property claims which are clearly covered by the statute. There is nothing to suggest, either in legislative history or in the cases, that Congress in enacting § 1001 intended to conserve the energies of only certain agencies. Accordingly, a technical construction of the word "jurisdiction" which would exclude from the scope of § 1001 all matters strictly criminal in nature, is rejected, and we agree with the views of Judge Register, who dissented in *Friedman*, that individuals, acting innocently and in good faith, will not be deterred from voluntarily giving information or making complaints to the F.B.I. Insofar as the penalty for a violation of § 1001 may exceed the penalty for perjury, the Supreme Court stated in Gilliland, supra, that "the matter of penalties lay within the discretion of Congress." 312 U.S. 95, 61 S.Ct. 523.

We have considered the other contentions of the appellant and find them to be without merit. Accordingly, the judgment of conviction is affirmed.